## FISCHER, Appellant, v. CITY OF ST. LOUIS.

### Division One, June 15, 1905.

1. **DIGNITY OF THE LAW: Reasonable Results.** Courts should be diligent to see that the law be applied with the aid of right reason to produce reasonable results in the every day affairs of life. The gravity necessary in the administration of justice to entitle the law to respect, necessitates that mere caprice of jurors and practical jokes have no part therein.

2. **NEGLIGENCE: Serious Injuries: Verdict of One Dollar: Set Aside.** If plaintiff was exercising due care and the city was negligent in not furnishing her a safe place in which to walk along its public street, and as a result of that negligence her ankle was broken and dislocated and she was otherwise seriously injured and remains a cripple, the instructions being correct, a verdict of one dollar for her will be set aside. In such case the verdict will not be considered as in effect a finding for defendant, but as a disregard of instructions, etc.

3. ———: **Stone in Sidewalk: Question for Jury.** A large mill stone was on a level with the sidewalk on its inner side, but extended more than two feet into the sidewalk towards the street, and there was five inches above the plane of the sidewalk. Between it and the curb was a wide extent of sidewalk upon which she could have safely walked. The stone had been there for 27 years, and was in front of a gate to a residence lot eighteen inches above the level of the stone, the premises thereon being set back. *Held*, that it was for the jury to say whether or not the city was negligent in permitting the stone to remain in the sidewalk. *Held*, also, that the long period of time it was allowed to remain there does not render the city's act any the less negligent if it was negligence under the circumstances at the time.

4. ———: **Contributory Negligence: Pedestrian: Question for Jury.** A washer-woman 68 years old, acquainted with the sidewalk, on her way home about nine o'clock at night, had in

mind that at one point a large stone extended from the inner side of the sidewalk outwardly towards the street and at its outer edge rose five inches above the walk, but there being no light and the night dark, she was confused as to her proximity to the projection and thinking she was well outside the line of danger, struck it, was thrown down, and badly injured. *Held*, that she was not guilty of such want of care as defeats her recovery as a matter of law, and whether or not her injuries were due to her own negligence was a matter for the jury.

5. ———: Tort: Setting Aside Small Verdict. The doctrine that in actions for damages for personal torts the court might set aside a verdict excessively great as indicating passion or prejudice or misconduct on the part of the jury, but would not meddle with a verdict ridiculously small, is not based on substantial reason, and is no longer the law.

6. ———: ———: ———: Duty of Court. Judges should set aside a verdict, either excessively large or ridiculously small, in actions of personal tort, where the result reached shocks the understanding and cannot be fairly justified on any hypothesis except misconduct or prejudice or disregard of instructions.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer*, Judge.

REVERSED AND REMANDED (*with directions*).

*Hickman P. Rodgers* for appellant.

(1) Where, in an action for personal injuries, the verdict for plaintiff is so grossly inadequate that it must have been the result of passion, prejudice, partiality, fraud, or misconduct, the judgment will be reversed and a new trial awarded, the rule in this respect being the same as when the damages are grossly excessive. Boggess v. Railroad, 118 Mo. 328; Fairgreve v. Moberly, 29 Mo. App. 141. (2) A verdict for nominal damages under a petition charging injuries to defendant's negligence, "should be quickly set aside as a travesty of justice, due either to prejudice, or mistake, or misconduct;" and "ought not to be considered a verdict for defendant if the evidence shows that plain-

tiff, if entitled to recover at all, is entitled to substantial damages." Syl. Chouquette v. Railroad, 152 Mo. 257.

Chas. W. Bates and Wm. F. Woerner for respondent.

(1) Under the evidence the appellant was not entitled to recover at all, and the jury should have been instructed to find for defendant. Appellant, therefore, cannot complain that the verdict in her favor was for only one dollar. For either of two reasons the plaintiff could not recover: (a) It was not shown by the evdence that there existed any dangerous obstruction or defect in the side walk such as would give the city reasonable cause to foresee that an injury such as plaintiff sustained might reasonably be expected to occur. In the absence of such there is no liability, for the city is not an insurer of the safety of pedestrians. The respondent cannot be held for an accident which it could not, in the exercise of ordinary prudence, have anticipated. If the accident was possible, yet, according to ordinary and usual experience, not probable, it is not negligence not to take precautionary steps to forestall it. Fuchs v. St. Louis, 167 Mo. 645; American Brewing Ass'n v. Talbot, 141 Mo. 683; Hamilton v. Buffalo, 173 N. Y. 75; Dillon, Mun. Corp. (4 Ed.), sec. 1015; Kaiser v. St. Louis, 185 Mo. 366. There was no negligence imputable to respondent in permitting the use of an ordinary stepping-stone for ingress and egress to and from the sidewalk to the premises abutting thereon. Such is a perfectly proper use of the sidewalk, and is not inconsistent with the public easement in the street. Dubois v. Kingston, 102 N. Y. 223; Teagar v. Flemingsburg, 109 Ky. 746, 53 L. R. A. 791. (b) Even if the city had been negligent, the undisputed testimony of the plaintiff herself shows that it was her own negligence that caused the accident, without which it would not have occurred. Having full knowledge of the alleged danger-

ous obstruction and having it in the mind at the time, she deliberately chose to rely upon her own judgment in being able to pass it without falling and premeditately took the chances and ran the risk of passing safely, when she could without inconvenience have gone elsewhere. She was guilty of contributory negligence as a matter of law, and the court should have so instructed the jury. Ordinarily the question of contributory negligence is one for the jury, but where the plaintiff's own case clearly establishes contributory negligence, there is no disputed fact for the jury to pass upon, and the matter is one of law. Roberts v. Tel. Co., 166 Mo. 384; Dubois v. Kingston, 102 N. Y. 224; Sindlinger v. Kansas City, 126 Mo. 324; Cohn v. Kansas City, 108 Mo. 393; Wheat v. St. Louis, 179 Mo. 579. (2) Under the evidence the verdict of the jury for one dollar must be sustained. There can be no doubt that this jury believed that the plaintiff ought not to recover, but deliberately found for her in order that the costs might be thrown upon the city. The verdict must be considered, not as compensatory to plaintiff, and therefore inadequate, but in effect a verdict for defendant on the merits, as it should have been in form as well as in fact. In such case the plaintiff cannot complain if the defendant does not. Haven v. Railroad, 155 Mo. 216; Pritchard v. Hewitt, 91 Mo. 550.

LAMM, J.—Action against respondent city for personal injuries predicated on its alleged negligence in permitting the half of a millstone or grindstone of considerable dimensions to be and remain in the footway or sidewalk of one of its thoroughfares, Second street. Damages laid at $5,000. Tried to a jury. Verdict, one dollar.

Asserting dissatisfaction over this small verdict, appellant filed a motion for a new trial challenging the verdict, because, she says, it was the result of passion, prejudice or misconduct on the part of the jury; be-

cause the verdict was inadequate and not commensurate with the injuries received; and because the jury failed and refused to heed the instructions of the court in that having found the issues in favor of plaintiff, it failed to fairly compensate her for her injuries.

The court below disallowed this motion and plaintiff duly appeals here, assigning said ruling as error.

It is disclosed by the record that the pleadings are unexceptionable and the instructions are unassailed. That at the close of appellant's case respondent challenged the sufficiency of her evidence to make a case and the trial court overruled a demurrer thereto. And that the jury was commanded by the court, *inter alia,* as follows:

"That if you find for the plaintiff you will assess her damages in such sum, as from the evidence you believe will be a fair and reasonable recompense for the injuries received by her. In fixing the amount of such damages, you will take into consideration the nature and extent of the physical injuries received, the pain and mental anguish endured, as well as the pain and inconvenience, if any, which you believe from the evidence will reasonably result from said injuries in future."

The undisputed facts follow:

Second or Columbus street is a public street of St. Louis. At a certain place in this street, close to its junction with Duchoquette street, there is a sidewalk or a footway of cinders, which walk at other points along the street was made of other material. One Smith owns a tenement abutting on this cinder walk. The street line of his premises is about eighteen inches higher than the level of the walk. Smith's house stands back from the street and is approached from the street by a gateway. In front of this gate, at the outer street limit, is a half of a grindstone or millstone extending along the outside street line three or four

feet, and projecting therefrom over into the sidewalk, in extreme limit, two and one-third feet. This stone, because of the uneven lay of the walk, or for some other cause only to be guessed at, is flush with the plane of the walk at the gate, but five inches above the plane of the walk at the point of farthest projection into the footway, so that, a person walking in the footway close to the gate might meet with little or no obstruction, but the same person walking two feet and four inches away from the gate would meet an obstruction five inches high. Defendant introduced evidence, not controverted, that this millstone had been there for twenty-seven years and filled the office of a stepping-stone to enter the premises of Smith. The evidence indicated that the walk was of considerable width and that there was ample room for pedestrians between the millstone and the curb. The evidence also indicated the nearest city light was 200 feet away. The character of this light was not shown, but it appears that at the point in question at the time in question the stone was obscured by darkness.

Appellant is an old washerwoman, burdened with the weight of sixty-eight years. Her daughter lived adjacent to the premises of Smith and had resided there for three years. She had visited her, say, a dozen times, and a few times, say three, had passed by this stone on said visits. It stands confessed that she was familiar with the location and character of the obstruction. On the evening of January 5, 1902, appellant visited her daughter. On returning home accompanied by her husband, after nine o'clock p. m. in the dark, she fell over this stone, thereby breaking and dislocating her left ankle, wherefrom she was confined to her bed for several months, suffered the pains and distress naturally incident to such injuries, and, as reasonably to be expected at her time of life, the broken bones did not knit by first impression nor did her injuries heal kindly, but she remained crippled and, so late as Oc-

tober, 1902, at the trial was obliged to walk with arti-
ficial aid. No question whatever is raised about the
extent or character of her injuries and resulting pains.

The old lady told her story on the stand in a broken
way with the idioms and phrasing of her German
mother-tongue, and with a consequent lack of clearness
on cross-examination, needing and appealing for a
touch of sympathetic intelligence to clear away obscur-
ity. Substantially and briefly she testified that as she
was walking that night on the street, she, in a general
way, had the stone in mind, but that in the darkness
she was confused as to its location and as to her prox-
imity to it and her distance from the street line, and
that in this condition of things, while intending to avoid
the obstruction and thinking she was well outside the
line of danger, she fell over it and suffered said hurts.

The foregoing is the whole story in small compass
and presents the only facts and issues for our adjudi-
cation. And on this record it is self-evident that if ap-
pellant was not guilty of such want of care as would,
as a matter of law, be contributory negligence, and if
under the evidence, as a matter of law, it can not be
said that respondent was not guilty of negligence in
permitting the character of obstruction indicated to be
and remain in the footway for pedestrians in one of its
streets, we must avow judicial sympathy with the con-
tention of appellant, and that sympathy has its root in
the following condition of things: the jury found the
issues for appellant; now, the only allowable meaning
of that finding when logically analyzed and interpreted
is, (1) that the jury found that respondent was negli-
gent; (2) it found that appellant was using due care;
and (3) it found that her injuries resulted from re-
spondent's negligence. There is one other allowable
hypothesis, and that is that the jury under the facts
intended to and did, in all but name, find for defendant,
but shrunk from meeting the issues and put its verdict
in the form it did on the question of costs.

In the evolution of a trial a verdict of a jury may be likened to a correct conclusion in a syllogism and if the conclusion be not correct it would put the law to open shame if a court, having due regard always for the independence of the jury and its power within bounds, did not apply a correcting hand to see that a perverted conclusion was corrected. Here we have a venerable woman coming into a court of justice for redress. Her very simplicity and humbleness and age bespeak tenderness at the hands of the law. It is adjudged that her serious injuries were the result of respondent's negligence and were suffered without her fault and yet for a broken and dislocated ankle and a long period of mental and bodily distress she is given a bagatelle. Courts should be diligent to see that the law, which is itself reason and common sense, be applied with the aid of right reason to produce a reasonable result in the everyday affairs of life. The gravity necessary in the administration of justice to entitle the law to respect, necessitates that mere caprice and practical jokes have no part or parcel therein, and it results if there was substantial unimpeached evidence upon which the jury could find that appellant was exercising due care and that respondent was negligent, this verdict, considering the grievous hurts of appellant, disturbs the moral sense and should be brushed aside.

Respondent recognizes the delicacy of the situation and insists (1) that there was no evidence of negligence and hence plaintiff should have been nonsuited, (2) that appellant's evidence affirmatively shows that she was not exercising due care and, hence, she should have been nonsuited, and (3) that the verdict, fairly considered, is a verdict for respondent on all the issues and was the result of blandness on the jury's part in the matter of costs. Of these in their order.

I. On the issue of the negligence of respondent in allowing the stone to remain in the street it is insisted

that the premises of Smith were higher than the level of the sidewalk, that the stone was a proper stepping-stone to reach these premises and that the city was in nowise negligent in permitting it to remain and be so used, considering the width of sidewalk left unimpeded for pedestrians. We are not called upon to pass on the question whether or not in a wide sidewalk, where ample room is left for foot-travelers and where houses have been so built, flush with the street, that stepping-stones become necessary for convenient ingress and egress, because of the street grade or for other reasons, a suitable stepping-stone permitted on the edge of the sidewalk would create a nuisance in the street and render a city responsible for injuries . to a pedestrian stumbling thereon in the dark. This case is not such a case and must stand on its own facts. The evidence shows that no reason exists why the step should not have been inside the building line; for Smith's house was not flush with the street but set back; that there was a rise of eighteen inches from this stone to his premises; that the plane of the sidewalk at the outside street line coincided with the plane of the stone and that the maximum rise in the step, so called, was in the street over two feet away from the gateway and thus it would happen that a person stepping on this stone from the street, designing to enter Smith's premises, would have to take practically another step before he reached the gateway and when he reached that point he would have to step up eighteen inches to get into Smith's premises. Vice versa, a person leaving Smith's premises by this gateway would step down eighteen inches to the stone, and when that step was taken he would be practically on the level of the sidewalk at that immediate point. He would then take a forward step on the stone and would be at the edge of the step-off of five inches to the sidewalk at that point. So that, while we are not called upon to decide that a suitable stepping-stone might not have been legally placed to enter

Smith's premises, we are prepared to say that the character of stepping-stone permitted in that sidewalk, projecting, as it did, an unnecessary distance into the walk, presents a case where the question of negligence was properly sent to the jury. Indeed, the stone might well be considered more of a snare, than a stepping-stone; for if it were not there, a person entering or leaving Smith's gateway would have practically no more or no less of a step up or down to enter or leave than he would have with the stone in place. The long period of time that this condition of things was allowed to exist does not tend to render it sacred in the eyes of the law, for an original sin of negligence will not ride into the wilderness on a scapegoat of mere time, and it must not be lost sight of that to pedestrians the mere fact that a condition has existed for a long time is of no significance, except it speaks to the point of notice and knowledge which necessarily varies as to each one.

We are cited to two cases by the learned counsel of respondent as sustaining its contention, but neither, in our opinion, lays down any principle determinative of the issues under this record. In one of them, a Kentucky case, Teager v. City of Flemingsburg, 109 Ky. 746, a street was on a grade and a step of a few inches was built or permitted by the city across a sidewalk to equalize this grade and to serve as a watershed, throwing the surface water of the street from the pavement, and the question was whether the building and maintenance of a sidewalk with a step, which, from the nature of the grade, the city government deemed necessary and proper, is of itself such negligence as will warrant a recovery by one injured in a fall caused by the step. It will be seen at a glance that the Kentucky case is not on all-fours with the case at bar. There a city, using its best engineering judgment, adopts a plan to level the grade and to serve as a watershed and in so doing acted within its delegated discretion and power to subserve public ends, there being no evidence that

the step was out of repair or unskillfully constructed. The same principle has been applied in this State by this court and the other appellate courts in proper cases.

In a New York case, Dubois v. City of Kingston, 102 N. Y. 219, it appeared that at a place brilliantly lighted at the time, Dubois, running to a fire in the night time, stumbled over a stone that was placed along the curb of a street in front of the post office as a convenience to persons entering and alighting from carriages and having business at the post office. In that case, as in this, there was ample room for the use of pedestrians left. The stone was three feet and four inches in length, twenty inches wide and fourteen inches high. It laid lengthways with the curb and at the north end of the stone was a lamp post of about one-half the width of the stone. The most that can be said for the New York case is that it was therein held that a stepping-stone on the edge of a curb for the comfort and convenience of the public did not constitute a nuisance in the absence of evidence justifying the conclusion that it was dangerous to travelers passing along the street and in the absence of evidence that the city authorities were chargeable with negligence in allowing it to remain where it was located. In that case, too, it was held that plaintiff was chargeable with negligence contributing to his injury. He was well acquainted with the locality and, as said, it was brilliantly lighted at the time and if he had been careful in exercising his faculties he would have avoided the accident. The cause was reversed and a new trial granted with costs to abide the event. So that, the facts are dissimilar and the case does not announce any doctrine that might not be granted, and yet leave this case a proper one for a jury, as in our opinion it was on the issue of negligence.

II. Was appellant guilty of such want of care as defats her recovery as a matter of law? On the facts set forth, and they are undisputed, we can not so hold.

Vol 189 mo—37

The place was dark and while she knew of the location and character of the obstruction and, being not forgetful at the time that she was in proximity to it, made conscious effort and intended to avoid it, yet it was clearly a question for the jury whether she, in the confused surrounding circumstances, acted with the prudence of a reasonable person while and in proceeding along that sidewalk at that time. The danger was not known to her as so obvious and glaring as to compel her to cease the use of the sidewalk and take to the street or to the other side and, if it be allowed that the city was negligent, it can not be contended that it had the right to place upon appellant the hard necessity of an absolutely infallible judgment in the darkness. The following cases, with many more, support this view: Garney v. St. Louis, 141 Mo. 180; Flynn v. Neosho, 114 Mo. 567; Loewer v. Sedalia, 77 Mo. 431.

The case, then, was properly sent to the jury on the issue of due care in appellant and the jury had substantial evidence upon which to base a finding that due care was exercised.

III. But it is stoutly contended by respondent that on all the facts of the case the jury should have found for respondent and that a one dollar verdict in substance and effect amounts to that, merely taking the peculiar form it did out of regard for appellant on the question of costs.

"Raking in the dead ashes of antiquated cases," to borrow the animated language of Chancellor KENT in discussing the earlier cases pertaining to the rule in Shelley's case, it may be found that a notion once prevailed that in an action founded in damages sounding in tort, the court might set aside a verdict excessively great as indicating passion, prejudice or misconduct on the part of a jury, but would not meddle with a verdict immoderately small. This doctrine was illogical and, being based on no substantial reason, is exploded. The true rule seems to be that a court with great hesita-

tion will invade the province of a jury and interfere with a verdict for damages sounding in tort for personal injuries, crim. con., seduction, slander, libel and other cases, especially where malice is an element and smart money or exemplary damages are allowed. But judges have never renounced their right, as an element in the administration of the law, to set aside a verdict, either excessive in bigness or ridiculous in littleness, where the result reached shocks the understanding and can not be fairly justified on any hypothesis except misconduct or prejudice or willful disregard of instructions. In arriving at a conclusion, however, the presumption is in favor of the good conduct of the jury and, therefore, if on the whole record the case preponderates in favor of the defendant, or is evenly balanced in the scales, or where, as in a case of assault, there was strong provocation, and where, as in case of slander, etc., there were facts tending to prove mitigation of damages, the courts have refused to interfere with nominal verdicts although on first blush they may appear illogical. It would serve no useful purpose to collate the cases or undertake to distinguish them, for they abound in nice refinements, and, after all, each case depends upon its own merits and can not be settled offhand on a mere general rule. The various propositions asserted above may be found discussed and applied in Weinberg v. Railroad, 139 Mo. 286; Haven v. Railroad, 155 Mo. 216; Dowd v. Westinghouse Air Brake Co., 132 Mo. 579; Overholt v. Vieths, 93 Mo. 422; Leahy v. Davis, 121 Mo. 227; Watson v. Harmon, 85 Mo. 443; Gregory v. Chambers, 78 Mo. 294; Pritchard v. Hewitt, 91 Mo. 547; Boggess v. Railroad, 118 Mo. 328; Goetz v. Ambs, 22 Mo. 170; Fairgrieve v. City of Moberly, 29 Mo. App. 141; Chouquette v. Railroad, 152 Mo. 257.

In Pritchard v. Hewitt, 91 Mo. l. c. 550 et seq., after quoting approvingly the reasons for the general rule of non-interference from Graham and Waterman on New Trials, to the effect that, "The reason for holding par-

ties so tenaciously to the damages found by the jury in personal torts is, that in cases of this class there is no scale by which the damages are to be graduated with certainty. They admit of no other test than the intelli-gence of a jury governed by a sense of justice. . . . To the jury, therefore, as a favorite and almost sacred tribunal, is committed, by unanimous consent, the ex-clusive task of examining the facts and circumstances, and valuing the injury and awarding compensation in damages. The law that confers on them this power and exacts of them the performance of this solemn trust, favors the presumption that they are actuated by pure motives, . . . and it is not until the result of the deliberation of the jury appears in a form calcu-lated to shock the understanding and impress no du-bious conviction of their prejudice and passion that courts have found themselves compelled to interpose,'' BRACE, J., speaking to the point, says: ''Of course, it goes without saying that actions *ex delicto,* wherein the damages may be measured with some degree of cer-tainty, are not within the rule, and that those cases where the damages, under the circumstances, are such as to shock the 'understanding,' and induce the con-viction that the verdict was the result of either passion, prejudice, or partiality, are exceptions to this rule.''

In Haven v. Railroad, supra, the court, *nisi,* set the verdict aside for inadequacy, and its action was sus-tained by this court. MARSHALL, J., discussing the mat-ter now in hand, said: ''In other words, where a jury has returned a verdict for nominal damages in a case where the plaintiff is not entitled to any damages, the verdict will not be set aside in the appellate court at the instance of the plaintiff.''

When it is determined, as it must be in the case at bar, that there was persuasive evidence of the negli-gence of respondent city, and when it is determined, as it must be, that there was little or no evidence show-ing a want of care on the part of appellant, and that all

the evidence in that behalf fell from her own lips and when fairly considered does not show want of due care, and when the serious character of the injuries of appellant stands confessed, as here, it follows, we think, that the verdict of the jury in this case ought not to be attributed to a benevolent disposition on the jury's part toward appellant in the matter of costs, and as a finding for respondent city based on the substantial evidence, but must be attributed to whim and arbitrariness and a disposition to play fast and loose with the law and the substantial rights of appellant, and should be explained alone as the product of prejudice or some kindred motive.

Holding these views, we conclude the learned circuit judge erred in not sustaining appellant's motion for a new trial, and therefore the cause is reversed and remanded with directions to the lower court to set aside the order overruling appellant's motion for a new trial; to sustain that motion and grant appellant a new trial; and for further proceedings in the cause.

All concur, except *Marshall, J.*, not sitting.