**BARTCH**

v.

**TERMINAL R. ASS'N OF ST. LOUIS.**

No. 28696.

St. Louis Court of Appeals.

Missouri.

Feb. 16, 1954.

Rehearing Denied March 12, 1954.

Not to be reported in State Reports.

Warner Fuller, Arnot L. Sheppard, John P. Montrey, St. Louis, for appellant.

Hullverson & Richardson, St. Louis, for respondent.

WOLFE, Commissioner.

This is an action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., whereby the plaintiff, employee, sought recovery for an injury to his hand. There was a verdict and judgment for the plaintiff in the sum of $10,000. Thereafter the plaintiff remitted the sum of $2,500, and the judgment for $10,000 was set aside and a new judgment for $7,500 was entered. It is from the judgment so entered that the defendant, employer, prosecutes this appeal.

Sherman Bartch was employed by the Terminal Railroad Association to load and unload mail and baggage at the Union Station in St. Louis. The mail and baggage were transported about the station in trucks which were pulled by hand. There were two types of these trucks. One of them is called a bull wagon. It has four rubber-tired wheels, the front two of which can be pivoted for the purpose of guiding it and it is drawn by a tongue or handle by which the front wheels may be turned. The second type is called a flat truck. It also has four wheels but two of these are in the center of it, and from the point where they are connected the flat body of the truck slopes slightly upward and there is one wheel in the center of each end. The end wheels are not in contact with the ground when the truck is turned as it is pivoted on the center wheels. There is a metal loop on each end by which the truck is pulled and when in motion only the center wheels touch the ground and it turns readily and is sensitive to anything hitting it in the rear.

In November, 1949, Bartch was pulling one of these flat trucks for the purpose of taking it to a "storage car" which was being loaded with mail. This car was on one of the tracks south of the general area in Union Station which is used by passengers. The course by which Bartch traveled to reach the car was paved with concrete which extended as a smooth platform next to the track upon which the car that was being loaded stood. The platform was free from obstructions of any kind. It was covered by an "umbrella" shed, which consisted of a roof supported by iron posts rising from the middle of the platform. Bartch intended to pull his truck along the east side of the platform and in so doing his right hand, which was on the west end of the pulling loop, was about two or three feet from the most northern post. He was facing forward and grasping the handle in such a manner that his thumbs were turned out. While so proceeding something hit his truck and caused it to swing so that his right thumb was crushed between the handle of the truck and the iron post supporting the roof. The plaintiff stated that there was no one but Terminal employees on the platform. Most of these

were ahead of him. He looked back after striking the post and the only person that was close to his truck was a Terminal employee named Nick Bonastia. Plaintiff was taken to the hospital where it was found that his thumb was so badly crushed that it was necessary to amputate it at the metacarpal-phalangeal joint and he stated that he suffered discomfort in the area of the amputation when his hand became cold.

Nick Bonastia, who was working in the same crew with Bartch, testified upon direct examination that he was standing on the platform and as the plaintiff came toward him from the north he stepped aside to let plaintiff pass. He stated that he was then to the north of a bull wagon and that his back was toward the plaintiff. After the plaintiff passed him there was a clash of iron. Bonastia then turned and saw the plaintiff holding his hand. There was no one else near the plaintiff except a man named Kecheris who was walking ahead of him. Bonastia did not touch the truck pulled by the plaintiff and was the only one that was close enough to it to have touched it, according to his testimony. He also testified that he was about five feet from the rear of Bartch's truck when it hit the post. On cross-examination he was questioned regarding a statement that he had made to an investigator employed by the plaintiff. In the course of this attempted impeachment of Bonastia he was asked what he had said in the statement relating to the whereabouts of Kecheris at the time of the occurrence, but as this is closely related to one of the questions presented for determination, it will be more fully discussed upon consideration of that question.

The first point which the appellant, employer, asserts is that the plaintiff failed to present evidence of sufficient probative force to submit to the jury any issue of defendant's negligence causing the injury. As stated, the action is brought under the Federal Employers' Liability Act, which provides that the employing railroad shall be liable for injury to its employees when such injuries result in whole or in part from the negligence of any of its agents or other employees. In passing upon the sufficiency of the evidence to bring the plaintiff within the act, we must be guided by the pronouncements of the Supreme Court of the United States upon that subject. Tatum v. Gulf, M. & O. R. Co., 359 Mo. 709, 223 S.W.2d 418; Malone v. Gardner, 362 Mo. 569, 242 S.W.2d 516; Crews v. Illinois Terminal R. Co., Mo.App., 260 S.W.2d 765.

As to the sufficiency of the evidence to present a jury question under the act, the Missouri Supreme Court in Malone v. Gardner, supra [362 Mo. 569, 242 S.W.2d 520], summarized the matter as follows:

"In recent cases the Supreme Court of the United States has said the Act does not make the employer the insurer of the safety of his employees; and the basis of the employer's liability is his negligence, not the fact that injuries occur. But it is the clear Congressional intent that, to the maximum extent proper, factual questions in actions arising under the Act should be left to the jury; that such cases may not be taken from the jury merely because the question of liability is close or doubtful; that the jury has the right to make all reasonably possible inferences from such probative facts in the evidence as the jury chooses to accept; and that it is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from a jury on the theory that the court gives equal support to inconsistent and uncertain inferences."

On examination of the facts before us, when viewed in a light most favorable to the plaintiff, as we must do, where the sufficiency of the facts to make a submissible case is raised, the following is evident. Bartch's truck was hit in the rear in such a manner that the front of it swung toward the post crushing his thumb. There was no one near enough to have done it but Bonastia, a fellow employee. We therefore have the injuring occurrence which could be caused by but one act and

but one person capable of performing that act in a position to do it. The only logical inference to be drawn from such a state of facts is that Bonastia, the one person capable of doing the act, did it. But in argument the defendant, employer, puts the question, from whence can any inference arise that Bonastia was acting in the scope of his employment and was negligent in hitting Bartch's truck, conceding it to be true that he jolted the truck drawn by Bartch.

█ In passing upon this as it applies to the Federal Employers' Liability Act, we are confronted with the fact that Bonastia was engaged in the general activity of the crew in loading mail into the railroad car which was the work for which he was employed. It was during this activity that the occurrence happened. This was sufficient to bring his act within the scope of his employment, but the proposition most earnestly pressed is that the evidence was insufficient to show that the hitting of the truck was an act of negligence.

These same questions have been passed upon by the Missouri Supreme Court in Winters v. Terminal Railroad Ass'n of St. Louis, Mo.Sup., 252 S.W.2d 380, 386, wherein the force of the evidence was identical with that before us. In that case the plaintiff, Winters, was pulling the same kind of a truck in front of a line of other trucks which were standing still. As he passed the first truck, attended by a man named Burlingame, it was caused to lurch forward and to hit Winters by reason of something hitting it from the rear. No one saw what hit it, but the only thing behind it were other Terminal trucks attended by Terminal employees. Passing upon the contentions which are substantially the same as those made here, the court stated:

"Reasonably fair-minded men might draw different conclusions from these facts and circumstances but they are certainly of sufficient probative force to support the necessary inferences and finding of fact that a Terminal employee so handled one of the Terminal's two-wheeled barrow trucks, sudden-ly and without warning, that it collided with Burlingame's truck with a 'hard jolt,' thus heedlessly endangering and injuring Winters' left hand. There is not here a complete absence of probative facts to support the jury's conclusion as there was in Moore v. Chesapeake & Ohio Ry. Co., supra [340 U.S. 573, 71 S.Ct. 428, 95 L.Ed. 547], and the appellant's negligence as well as proximate cause, under all the circumstances, were appropriately submitted to the jury."

█ Under both cases we find it contended by appellants that to hold that the evidence is sufficient to charge the defendant with actionable negligence is to permit an inference of negligence to rest upon an inference that the employee did the act complained of. As to resting one inference upon another, the court stated in the Winters case:

"When the statement concerning inference upon inference is employed its probable intended meaning is that 'an inference cannot be based upon evidence which is uncertain and speculative or which raises merely a conjecture or possibility,' * * *."

In that case, as in this, the discussion was limited to the sufficiency of the proof required under the Federal Employers' Liability Act. Many of the same cases relied upon were cited and discussed in the Winters case and all of them are readily distinguishable upon the facts. We must follow the Winters case and conclude that the evidence was sufficient.

The defendant also contends that instruction designated as No. 5, given at the request of the plaintiff, was erroneous. It directed a verdict for the plaintiff upon the finding of certain facts and the portion complained of is as follows:

"that as Mr. Bartch got close to said post *one of said employees of the Terminal Railroad loading mail into said car* then and there acting within the scope and course of his employment by the defendant, if you so find, suddenly

and without warning caused the rear of Mr. Bartch's truck to be given a jolt." (Emphasis ours.)

It is stated that this permitted the jury to speculate upon the possibility that someone other than Bonastia might have hit the truck and that the evidence clearly showed that no one but Bonastia could have done so. The plaintiff counters by stating that there was evidence from which the jury could have found that the employee named Kecheris was also close enough to have pushed Bartch's truck. The testimony of the plaintiff without question puts Bonastia as the only one near enough to the truck to have jolted it. Bonastia testified that after he and Kecheris had stepped aside Kecheris had gone on ahead of Bartch's truck, but he was cross-examined about a statement that he had made. To place Kecheris in a position to have done the act, the plaintiff relies upon some questions and answers read from this statement of Bonastia on cross-examination in an effort to impeach his testimony as to the whereabouts of Kecheris at the time Bartch was hurt.

These contradictory statements do not constitute substantive evidence, for "the decided weight of authority, with which our own controlling decisions are in accord, is to the effect that, even where it becomes proper to impeach a witness by proof of his prior contradictory extrajudicial statements, such statements are admissible only for the purpose of his impeachment, and are not to be taken as substantive and affirmative proof of the facts stated therein." Woelfle v. Connecticut Mutual Life Ins. Co., 234 Mo.App. 135, 112 S.W.2d 865, loc.cit. 873, and cases therein cited. There was therefore no evidence that Kecheris could have pushed the truck, and the instruction cannot be justified upon the ground that he could have done so. But the plaintiff, respondent, also contends that since Bonastia was "one of said employees" the instruction is not erroneous. This might have been logically contended if the statement about Kecheris had not been before the jury. Bonastia denied that

he himself had jolted the truck. The jury could have believed this and yet, under the instruction, they could have erroneously reached the conclusion that Kecheris did it. In fact they were invited to do that by the argument of counsel. For this reason the instruction was erroneous.

Since the case must be retried we should consider other points raised that may be present upon retrial. Some of these relate to instructions requested by the defendant and refused by the court. The first is designated instruction A. It is an attempted cautionary instruction, intending to confine the jury's findings to the evidence presented. No purpose can be served by setting it out, and it is sufficient to say that the court properly refused it for several reasons, the most notable of which is that it would have barred the jury from drawing any inferences from the evidence.

The second instruction refused was an accident instruction. In Phillips v. Vrooman, 361 Mo. 1098, 238 S.W.2d 355, loc.cit. 359, the court said:

"It has been said that when the cause of a casualty is known it is better to instruct the jury on the specific issues of fact presented, and so the practice has grown up under our case law of limiting the giving of accident instructions to instances in which there is evidence tending to show the cause is unknown, on the theory that the contrary and more abstract course would confuse the jury."

The evidence in the present case presents no unknown cause and the instruction was properly refused.

The remaining assignments had to do with the argument of counsel. In summing up for the plaintiff he said:

"Bonastia's memory may be a little bit fogged up about some of these things. He may not remember as clearly as he did then, and he may not have been the one who jolted that truck so as to shove it against that post. It may have been Kecheris, who

was standing north of Bonastia, but he didn't appear. And why? Now just let my fine friend tell you, if he can, why he wouldn't produce Mr. Kecheris, * * *."

The briefs deal with the question of whether or not Kecheris was equally available to both parties, but that is beside the point, for since there was no evidence placing Kecheris in a position to have done the act or showing that he knew anything of the occurrence, the argument went beyond the evidence and was improper.

The amount sued for was $7,500, but counsel for plaintiff in argument asked the jury to return a verdict for $14,000. He stated that the court had the power to reduce the amount awarded, but had no power to increase it. When objection was made to this there took place out of the hearing of the jury the following colloquy between the court and counsel:

"The Court: Mr. Richardson, you are only asking for seven thousand five hundred dollars. How can you argue to the jury to bring in a verdict * *.

"Mr. Richardson: I think they are entitled to. It can be reduced by the Court.

"The Court: You shouldn't ask the jury to bring in more than you sue for.

"Mr. Richardson: What difference does it make? It can be reduced.

"The Court: You should have asked to amend your petition.

"Mr. Montrey: I will object.

"The Court: I wouldn't permit it to be amended, but I will permit you to instruct the jury you are only suing for seven thousand five hundred dollars.

"Mr. Richardson: I don't think that is proper.

"The Court: I think it is the only thing to do."

Nothing further was done and the case was submitted to the jury with the result that a verdict was returned for $10,000 and the plaintiff later made a voluntary remittitur of $2,500. Thus we are presented with the anomalous situation of counsel asking for more than he has sued for and seeking to justify his act by saying that if the jury is led into the error that he has asked them to unwittingly commit, that error can later be corrected by the court. It is a jury function to assess damages within the amount for which recovery is sought. Where their verdict is excessive, the court, under our practice, may direct that a new trial be had unless the excess is remitted. This is a matter for the court and not the jury.

Counsel may not intentionally bring about error and justify such conduct on the ground that it may be corrected after trial. All prejudicial error may be dealt with subsequent to the trial, first by the trial court and then by the appellate court. The defendant was entitled to a jury trial on the issues as pleaded free from error. This right was deliberately thwarted by the argument of plaintiff's counsel and the argument so made was clearly erroneous and prejudicial.

For the reasons stated, the Commissioner recommends that the judgment be reversed and the cause remanded for a new trial.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly reversed and the cause remanded.

ANDERSON, P. J., BENNICK, J., and GEORGE P. ADAMS, Special Judge, concur.