Joseph D. SPICA, Respondent,

v.

Mary Ann McDONALD, Appellant.

No. 47409.

Supreme Court of Missouri.

Division No. 1.

April 11, 1960.

Evans & Dixon, John P. Montrey, St. Louis, for appellant.

Byron A. Roche, Doris J. Banta, St. Louis, for respondent. Carter, Bull & Baer, St. Louis, of counsel.

DALTON, Judge.

Plaintiff instituted this action to recover $1,000 damages resulting to his 1955 Buick automobile when it collided with a 1956 Chevrolet coupe automobile operated by defendant. Defendant counterclaimed for $15,000 damages for personal injuries sustained in the same collision. Verdict and judgment were for defendant on plaintiff's petition and for defendant and against plaintiff for $2,250 on defendant's counterclaim. Defendant's motion for a new trial on her counterclaim on the issue of damages only was overruled and she has appealed from the judgment as entered.

Only a partial transcript, sufficient for the purposes of this appeal, is presented. Appellant complains that the verdict on her counterclaim is grossly and manifestly inadequate; that Instruction No. 11, excluding certain alleged evidence of medical expense, is erroneous; and that improper and prejudicial argument was permitted.

On Saturday morning, March 23, 1957, about 3:30 a. m., the appellant, age 25, was operating her Chevrolet coupe westward on Newhouse Avenue at 15 to 20 m. p. h. and, when crossing 25th Street in the City of St. Louis, the left rear side of her automobile was struck by the front end of a Buick automobile operated by respondent northwardly on 25th Street. Appellant's automobile spun around in a counterclockwise direction and its right rear corner struck and came to rest against a lamppost. Appellant remained in the car, but found herself in a slumped position at the right side of the front seat against the right door when the automobile came to a stop. She could not say what parts of her body hit what parts of the automobile. She knew an inlay was knocked out, a filling loosened and her tongue was bleeding, but she did not become alarmed about it. When respondent asked her if she was injured, she replied: "I am all right; I am all right." She made the same answer when the police arrived and asked if she was injured. She didn't mention the injuries to her tongue or teeth. From the scene of the collision, appellant went to the police station and then to her home. She didn't phone her mother from the police station, because it was late and her mother was a heart patient. She didn't want to be taken to the hospital in an ambulance for fear it would shock her mother. She didn't sleep well that night and was up early the following morning, at which time she noticed black and blue marks about her face and she felt dizzy and nauseated. There were bruises on her legs, thighs, sides, arms and face. Her lips and both cheeks were swollen and there was a cut in her mouth. Her teeth felt as though she had forced one or two of them out of position. On the following Monday, she phoned her doctor and a dentist. When she saw Dr. Sausville, he examined her and made X-rays. The doctor taped an injured toe to the next one and gave electric treatments for her bruises. She saw the doctor a total of eight times, the last time in April or May 1957. The amount of this bill was around $70–$80.

On the Monday after she was injured, she also saw her dentist, Dr. Eugene Brezany, who had been her dentist since she was a little girl. The cause was tried September 29, 1958, and she said she had seen Dr. Brezany "on the average of once or twice a week since the accident, and was

still under his care." Five teeth were extracted after the accident, but only three were charged to it. He did crowning and false work, but she kept complaining of pain in her mouth; and that her front teeth didn't feel right when she would bite into food or try to chew. Dr. Brezany referred her to Dr. Gruchalla, whom she saw about eight times. The first time she was in a dental chair for 3½ hours. About one year after he first saw her, Dr. Gruchalla drilled holes in four of her teeth and removed the nerves—this took four trips to his office. He sent a bill for $500.

Her teeth are not all right now. They are sensitive to both hot and cold. She has false teeth and a bridge. She still has pain in her mouth in these teeth, and "they don't seem to fit or something." She still has back and neck discomfort, which causes severe headaches. She did not have any of these troubles before she was injured. She also said that her only present complaints were of the fit of her teeth and her headaches.

She had two molars pulled before she was injured, and she had her two lower wisdom teeth and three other teeth pulled after she was injured. She didn't have a job when she was injured, but she started to work nine days later for the Blue Cross Insurance, Registration Department. She hasn't lost any time since she began work. She kept her foot bandaged for around three or four weeks, but has had no trouble since. Her right shoulder was bruised in the accident, but she has no limitation of motion in her right shoulder or in any joint of her body. She has headaches two or three times a week. She never suffered headaches like this, or as frequently, before she was hurt. She saw Dr. Martin Kay, an eye doctor, and he prescribed glasses which she uses for reading, and she loves to read. She has headaches when she wakes up in the morning and often they last the whole day or sometimes two days. She has complained to her doctors about these headaches.

Since the accident, and because of it, Dr. Wilhelme sent her to the Jewish Hospital for two days for examination and treatment for severe backache, but no operation was performed. Subsequently, she was examined by Dr. Lund at respondent's request.

The testimony of Dr. Albert J. Sausville tended to show that he first saw appellant on March 25, 1957. He found contusions about her face, a swollen right cheek, stiffness and tension in her left bicep, left leg, left thigh, and an ecchymosis about the small toe on the left foot. For the bruises he "instituted therapy with a diathermic machine." He found a complete fracture of the distal phalanx of the small toe. There was no displacement, and it was in good alignment. Any disability from such an injury would ordinarily not exceed three weeks. He saw appellant only four times in connection with these injuries. He did not examine her teeth and made no notation in his records of any complaint by appellant concerning any injury to her tongue or teeth. The injuries he observed could have resulted from a collision of automobiles by being thrown against a door. He discharged appellant on April 8, 1957, and assumed she had fully recovered. His charge for services, including three X-rays, was $75. This was a reasonable charge.

The testimony of Dr. Eugene E. Brezany, a dentist, tended to show that, when he first saw appellant on March 25, 1957, she was in a violently shocked condition. He observed that her tongue was cut and she had swollen lips and a cut on the inner side of her lips. Her lower right first molar was cracked on the lingual side and the upper right lateral, the upper right central and the upper left central teeth were cracked transversely and certain of her teeth were out of alignment, the two centrals were pushed inward and a lateral outward. She could not close her mouth as she wanted to, or eat, and she was on liquids. Appellant had also sustained a fractured maxilla, without displacement.

There was also a fracture on two areas of the upper anterior teeth but the teeth were in good alignment so she could close on those front teeth. He saw defendant on thirty-three occasions following the accident, including the other dental work done for her that was not accountable to this accident. In all, he said that nine teeth were injured in the accident and four additional teeth were used to hold dentures or abutments to replace the three teeth that were extracted because of the accident. He extracted three teeth for cause not due to the accident. He said that Dr. Gruchalla removed the nerves from four teeth, to wit: the upper right lateral, upper right central, upper left lateral and the upper left first molar. Dr. Brezany further testified: "I replaced the first molar that was extracted with a bridge. The second molar and second bicuspid were the abutment teeth. They were fully encapsulated in a full cast, gold crown; then the dummy teeth are swung in with gold occlusal and trupontic porcelain against the gum on the upper right side. Another bridge was replaced—upper left second molar—again a full cast, gold crown; the first bicuspid has a veneer crown that has a white facing baked on it, and the two teeth that were extracted were replaced by dummy trupontic with the gold occlusal porcelain against the tissue for aesthetics." Appellant had about seventeen teeth filled before she was injured. He sent appellant a statement for $985 for work attributable to the accident. He said this was a fair and reasonable charge. He also charged her $245 for other work not due to the accident, but made no charge on the books for extracting three teeth which were not required to be extracted because of the accident. His record showed $200 paid and a balance of $45 due.

The testimony of Dr. Robert Herluf Lund on behalf of respondent tended to show that, at the request of respondent, he examined appellant on two occasions. Except for a pelvic disorder that was unrelated to the accident, Dr. Lund found nothing to substantiate appellant's complaints. During the course of his testimony he examined X-rays taken of appellant by others. He found no evidence of a fracture of the maxilla. The two areas that had been encircled on these films by Dr. Brezany, as demonstrating the site of such a fracture, were not even of the same areas. In examining X-rays of appellant's toe, he did see an obvious fracture of the distal phalanx of the fifth toe which was in pretty good alignment. Dr. Lund agreed that appellant was missing some natural teeth and he saw no reason to believe that this was not the result of the accident. He was not prepared to testify that appellant did not suffer a maxilla fracture.

As stated, appellant sued for $15,000 and was awarded $2,250 by the jury. Was the verdict grossly inadequate? The determination of the amount of the damages in a personal injury case is primarily for the jury. Donahoo v. Illinois Terminal R. Co., Mo.Sup., 300 S.W.2d 461, 469; Wilhelm v. Kansas City Public Service Co., 358 Mo. 6, 212 S.W.2d 915, 918.

The trial court has approved the verdict in this case on the issue of inadequacy and has overruled appellant's motion for a new trial. In view of these circumstances this court will not weigh the evidence, but will limit its inquiry to a determination of whether there is substantial evidence to support the jury's verdict and whether the trial court abused its discretion in refusing to grant appellant a new trial on the issue of damages. Glore v. Bone, Mo.Sup., 324 S.W.2d 633; Combs v. Combs, Mo.Sup., 295 S.W.2d 78, 80. In determining these issues we keep in mind that the credibility, weight and value of the testimony was for the jury and, accordingly, we must view the evidence in a light favorable to the verdict returned by the jury. Baker v. Brown's Estate, 365 Mo. 1159, 294 S.W.2d 22, 26(8); Brown v. Moore, Mo.Sup., 248 S.W.2d 553, 559.

We have seen that appellant lost no wages. She was not employed when she

was injured and she has lost no time from her employment since, although she has .sometimes had to use her lunch time to see a doctor or dentist. It is apparent that she had very bad teeth before the collision, as evidenced by some seventeen fillings. Two teeth were removed before the accident and three since, and these removals were not chargeable to the collision. While two or three teeth were removed because of the injuries sustained and the nerves were removed from four others after she was injured, there was no evidence as to the purpose or effect of nerve removals, or that the nerve removals 15 months after the collision were the result of injuries sustained. She had had a nerve removal before she was injured. Dr. Sausville saw appellant only four times, charged her $75 and discharged her on April 8 after her injury on March 23. For reasons hereinafter stated, we disregard the amount of Dr. Gruchalla's bill for services.

As to Dr. Brezany's statement for services, while he testified as to the value of these services, the jury was not bound by his testimony. He said that the most he had charged appellant for any filling was $58 for a gold inlay; and that the most he had ever charged anyone for filling one tooth with gold was $90. Other fillings for appellant included two gold filings, two white fillings and six silver fillings. Although he assigned certain charges as due to the accident and others as not due to it, he did not fully explain the respective charges, or say what was charged as to each injured tooth and why the work was required. There was also some testimony from which the jury could infer that he could not correctly read X-rays; and that he had a tendency to exaggerate. Appellant's testimony was also disputed in some respects, as where appellant insisted she had seen Dr. Sausville eight times while the doctor said he saw her only four times. Dr. Lund could find no cause or objective basis for appellant's headaches. Appellant's headaches and uncomfortableness from her teeth were subjective symptoms resting alone on appellant's testimony, unsupported by other evidence. While the jury returned a verdict in her favor, indicating that they believed her testimony, her testimony fixed no money value for her injuries.

■ Appellant cites Brown v. Moore, supra, 248 S.W.2d 553, 558; Hufft v. Kuhn, Mo.Sup., 277 S.W.2d 552, 554; Ulrich v. Kiefer, Mo.App., 90 S.W.2d 140; Fischer v. City of St. Louis, 189 Mo. 567, 88 S.W. 82. In these cases there were serious injuries, the extent of which were not in dispute, and plaintiff obtained only a very small or nominal verdict in view of almost conceded injuries. The case before us was defended on the theory that appellant suffered no serious or permanent injuries, except for the loss of three teeth. We cannot say that, on the record presented, the verdict was grossly inadequate or that the court abused its discretion in overruling the motion for a new trial on the issue of damages. Glore v. Bone, supra, 324 S.W.2d 633; Wilhelm v. Kansas City Pub. Ser. Co., supra, 212 S.W.2d 915, 918; Conner v. Neiswender, 360 Mo. 1074, 232 S.W.2d 469; Roush v. Alkire Truck Lines, Mo.Sup., 245 S.W.2d 8; Vogrin v. Forum Cafeterias of America, Inc., Mo.Sup., 308 S.W.2d 617, 622.

■ Did the court err in permitting improper and prejudicial argument? Appellant testified that she resided with her mother in the City of St. Louis at the time she was injured and at the time of the trial; and that her mother, Nonie Whalen, was a deputy sheriff "in this building," the Civil Courts Building; and was there "at work" that week. Appellant's counsel argued to the jury that the only defense to appellant's counterclaim was that her mother was a deputy sheriff; that the collision occurred at 3:30 a. m.; that appellant was not hurt because she didn't tell the police she was hurt; and that the defense was all innuendo, inference and smoke screen. Counsel further argued that $15,000 was a reasonable and proper amount as compen-

sation, taking into consideration her medical and dental expenses, the nature and extent of her injuries and the pain and suffering of body and mind, past and future. In reply, respondent's counsel stated: "* * * this lady * * * is coming into this court room and asking you to assess damages for painful, serious, permanent injuries that she has sustained as a result of this accident; yet her mother is in the same building and doesn't take the stand to testify that this girl was or was not injured. * * * That is proper argument, ladies and gentlemen; does her mother bother to come in, across the hall, or up the elevator, and tell you that the girl was or was not injured. By Mrs. Whalen's failure to take this stand you can assume that what she would have said wouldn't have helped her daughter." During the course of this argument appellant's counsel several times objected on the ground that this argument was improper; and that "her mother wasn't a party to this accident and was not a witness." Counsel also asked the court to declare a mistrial. The same objections are presented now.

Appellant cites Block v. Rackers, Mo. Sup., 256 S.W.2d 760, 764(5–8) where the rule is stated, as follows: "Further, it is well settled that the failure of a party having knowledge of the facts and circumstances vitally affecting the issues on trial to testify in his own behalf, or to call other witnesses within his power who have knowledge of such facts and circumstances, raises a strong presumption that such testimony would have been unfavorable and damaging to the party who fails to proffer the same. * * * Such failure may be commented upon in argument." Appellant also cites Belding v. St. Louis Public Service Co., 358 Mo. 491, 215 S.W.2d 506, 513, 514, approving the same rule and stating certain limitations, as follows: "Where a legitimate basis exists, it is of course entirely proper for one party to comment upon his adversary's failure to have produced material witnesses * * *. There is no dispute concerning the governing

principle, i. e., that no inference may be drawn, and no unfavorable comment made by counsel on account of the non-production of witnesses whose evidence is equally available." The third case cited, Bartch v. Terminal R. Ass'n of St. Louis, Mo.App., 264 S.W.2d 937, 943, deals with a further limitation where the court said: "* * * since there was no evidence placing Kecheris in a position to have done the act or showing that he knew anything of the occurrence, the argument went beyond the evidence and was improper."

The cases cited do not aid appellant because a reasonable inference could be drawn that, if appellant had sustained serious and permanent injuries justifying a recovery of $15,000 damages, her mother, residing in the same home with her, would have had some firsthand information concerning the fact of injury, the extent of such injuries and the complaints concerning the extent of the pain and suffering endured by her; and that, if her mother's testimony would have aided her efforts to collect $15,000 damages, she would have used her mother as a witness. If appellant suffered the disabilities complained of, including headaches, backaches and tooth trouble from the date of the collision to the time of the trial, she would no doubt have expressed herself many times in the presence of her mother. See Jones v. Central States Oil Co., Mo.App., 170 S. W.2d 153, 159(9–10); Kickham v. Carter (second appeal), Mo., 335 S.W.2d 83. Her mother was not equally available to respondent, who would properly have assumed that a mother would be inclined to support her daughter. The court did not err in overruling appellant's objections to the mentioned argument. Willitts v. Chicago, B. & Q. R. Co., Mo.Sup., 221 S.W. 65, 66(3); Glore v. Bone, supra, 324 S.W.2d 633, 637 and cases there cited.

Appellant contends the court erred in giving Instruction No. 11, which told the jury that if their verdict was for appellant on her counterclaim "then in assessing defendant's damages you may not take into con-

sideration any expense, if any, for dental treatment rendered to defendant by Dr. Gruchalla." Appellant insists that "the evidence showed that appellant received a bill for $500 from the doctor and there was substantial evidence that this was a proper and reasonable charge." Appellant relies upon her own testimony and that of Dr. Brezany.

Dr. Gruchalla did not testify in this case. None of the medical witnesses expressed an opinion on the reasonableness of the charges made by Dr. Gruchalla against appellant. Appellant testified, as stated, that Dr. Brezany referred her to Dr. Gruchalla and she saw Dr. Gruchalla on eight separate occasions, the longest of these visits consisted of her spending three and one-half hours in the dentist chair in his office. On four of these visits the doctor drilled holes in her teeth and removed nerves from four of them and she testified that she subsequently received a bill for $500 from Dr. Gruchalla. Dr. Brezany said: "I don't do nerve removal any more." He sent appellant to Dr. Gruchalla in June 1958, because he suspected her front teeth were bad, that is, that the nerves were bad in these three teeth. Dr. Gruchalla would handle that type of work if it was existing. Dr. Brezany testified that, after he had referred appellant to Dr. Gruchalla and she had visited Dr. Gruchalla, he could see that Dr. Gruchalla had actually removed the nerves of the upper right lateral, upper right central, upper left lateral, upper left first molar. It is not clear that all of these nerve removals were required because of injuries sustained.

On the basis of the above testimony appellant insists that there was substantial evidence that the medical services rendered by Dr. Gruchalla were necessary and proper; and that the charge was a reasonable and fair one. Appellant concedes that the rule is that when doctor bills are to be submitted to a jury they must be supported by substantial evidence as to the propriety of the service, the amount charged and the reasonableness of the charge. Appellant insists that the law of this state does not require the doctor to testify that the amount of the medical bill is fair and reasonable. Appellant cites the following Missouri cases: Abbitt v. St. Louis Transit Co., 104 Mo.App. 534, 79 S.W. 496, 497; Gibler v. Terminal R. Ass'n of St Louis, 203 Mo. 208, 101 S.W. 37; Stewart v. George B. Peck Co., 234 Mo.App. 864, 135 S.W.2d 405, 412; Sharon v. Kansas City Public Service Co., Mo.App., 208 S.W.2d 471, 475. These cases do not aid appellant in view of the facts before us.

We find no evidence in this record as to the value of these services. Appellant's recovery for such services depends not only upon proof of their reasonable necessity, but upon proof of their reasonable value or worth. The mere mailing of a statement to appellant for a specific amount does not supply the substantial evidence required. The amount of the bill was not approved or paid by appellant. There was no evidence that appellant had assumed or agreed to pay any such sum for the mentioned services. The statement was for dental work, which requires special knowledge and professional skill. Its value was not a matter of common knowledge, and it was necessary for appellant to show the reasonable value of the mentioned services, if she wanted to recover such amount. See Allmon v. Allmon, Mo.App., 314 S.W. 2d 457, 462(8–10). The instruction was not erroneous. Hamilton v. Patton Creamery Co., 359 Mo. 526, 222 S.W.2d 713, 717; Murphy v. S. S. Kresge Co., Mo.App., 205 S.W.2d 252, 256; Randall v. Steelman, Mo. App., 294 S.W.2d 588, 594(7). And see: Girratono v. Kansas City Public Service Co., 363 Mo. 359, 251 S.W.2d 59, 65; Markovich v. Kansas City Public Service Co., Mo.Sup., 266 S.W.2d 641, 646; Myers v. Karchmer, Mo.Sup., 313 S.W.2d 697, 706. The assignment is overruled.

The judgment is affirmed.

All concur.