248 S.W.2d 553 (1952)
BROWN
v.
MOORE et al.
No. 42603.
Supreme Court of Missouri, Division No. 1.
April 14, 1952.
Motion for Rehearing or to Transfer to Denied May 12, 1952.
*554 Robert L. Jackson, W. H. Norton, Kansas City, for appellant Brown.
Hook & Thomas and Inghram D. Hook, all of Kansas City, for appellant Moore.
Roy P. Swanson, Charles B. Blackmar, Robert W. Dammann and Blackmar, Newkirk, Eager, Swanson & Midgley, all of Kansas City, for respondent.
Motion for Rehearing or to Transfer to Court en Banc Denied May 12, 1952.
DALTON, Judge.
Action for $26,200 damages for personal injuries and property damage sustained in a collision of automobiles occasioned by the alleged negligence of defendants (master and servant) in failing to operate the automobile of defendant Locke, Inc. (hereinafter referred to as Locke) as close to the right-hand side of the highway as was practicable. Defendant Moore, the operator of the automobile owned by defendant Locke, filed a counterclaim for $25,000 damages for personal injuries alleged to have been sustained on account of plaintiff's negligence in driving his automobile at an excessive rate of speed, failing to keep a proper lookout for vehicles ahead, not operating his automobile as close to the right-hand side of the highway as practicable and in driving said automobile into collision with the automobile operated by defendant Moore. Defendant Locke filed a counterclaim to recover $2,500 damages on account of damage to its automobile sustained by reason of plaintiff's alleged negligent operation of his automobile.
On trial, the jury found the issues on plaintiff's petition for plaintiff and against both defendants and assessed plaintiff's damages at $500. The issues on the respective counterclaims of Moore and Locke were found in favor of the plaintiff. Both defendants and the plaintiff filed motions for a new trial. Defendant Locke also filed a motion to set aside the verdict and judgment and to enter judgment for defendant Locke or in the alternative for a new trial. All three motions for a new trial were overruled but, on the same date, the court sustained defendant Locke's motion to set the verdict and judgment aside and enter judgment for said defendant. The motion was sustained on paragraph 4, towit: "The evidence affirmatively shows that plaintiff was guilty of contributory negligence as a matter of law in swerving his car suddenly from the right side of said highway in front of and into defendant's said automobile, and in not sounding his horn or applying his brakes or in any way attempting to avoid said accident." Plaintiff Brown and defendant Moore have appealed.
Appellant Moore and respondent Locke insist that appellant Brown's own testimony shows contributory negligence as a matter of law, barring any recovery. Appellant Brown insists that he was not guilty of contributory negligence as a matter of law; and that the trial court erred in sustaining respondent Locke's motion to vacate the verdict and judgment and in entering judgment for defendant Locke. A review of the evidence favorable to plaintiff on the issue of contributory negligence is required.
It was admitted that the alleged collision occurred on the afternoon of March 12, 1949, on U. S. Highway 71, approximately one-quarter of a mile north of Grandview, Missouri; that the automobile operated by defendant Moore was owned by defendant Locke; and that defendant Moore was "in the general employ of Locke, Inc."
U. S. Highway 71 at the place in question is paved. It has three traffic lanes and there is a gentle downhill slope toward *555 the north. A side road extends east from the highway. There were yellow lines, or traffic control marks, on the highway. One yellow line confined northbound traffic to the east lane of the highway. Another yellow line, intended to confine southbound traffic to the west lane, did not begin until some 54 feet south of the point of collision. At the intersection of the side road there were no traffic control marks or yellow lines to confine southbound traffic to the west lane of the highway. Moore, a witness on behalf of both defendants, testified that he was familiar with the yellow lines on the day in question at the place in question. He said that it was the duty of northbound cars to be in the east lane, but that "southbound traffic could still be in the center lane." He further said that Brown had not reached, but was only approaching the yellow line or point where southbound traffic was supposed to start pulling back to the west lane.
At about 5:40 p. m. on the day in question Brown, who was operating a 1942 Pontiac automobile, was traveling south, uphill, in the west lane of the highway at 20 to 30 miles per hour. It was snowing awful hard and Brown had the headlights on. He had driven the road many times and was familiar with it. He was overtaking another automobile (the Binns' car) traveling in the same direction and, when about 100 feet behind it, he pulled out into the center lane to pass. He was about one-third of the way up the hill and would have had time to pass before reaching the top of the hill. It was then snowing so hard he could not see the top of the hill. He could not see more than 25 to 30 feet beyond and to the left of the Binns' car until he had pulled out into the center of the highway to pass it. Before he started to pull out, he could see 125 to 135 feet and to the left of the Binns' car. He didn't see Moore's car until he (Brown) had started to pull out of the west lane. He then saw Moore's car almost in the center lane and 75 to 100 feet or more to the south and pretty close to the Binns' car. Moore was operating a 1947 Pontiac automobile northward and was driving at 35 to 40 miles per hour. When Brown first saw Moore's car it was coming out of the east lane and over toward where Brown's car was on the highway. At the time the left front wheel of Brown's car passed over the line between the west lane and the center lane, Brown's car was moving at approximately 35 miles per hour. Moore's car was coming down the hill and down the highway in a slanting direction toward Brown's car. It "was coming kind of in a diagonal direction, kind of antigoglin" and right beside Binns' or approximately so. The Moore car came within two or three feet of hitting Binns' car. It looked like Moore's car was going to come over to the west side of the highway, and Brown tried to get over to the other side. Brown pulled to the left, turned left, to avoid Moore's car. Brown did not turn back to the west lane because that would have been in the direction Moore was coming. Brown made no effort to turn right, and back into the west lane, nor did he have time to do so. To have turned back west would have been in the direction Moore's car was coming. He tried to turn left to avoid Moore's car, but before he had time to either get over out of the way, or to get back in the west lane, the collision occurred in the center lane of the highway. Only part of Brown's car was out in the center lane at that time. The right front of Brown's car collided with the right front of Moore's car. There was no evidence as to whether Brown sounded his horn or applied his brakes and no such issue is now raised. The point of collision on the highway was 15 feet north of the side road. Brown's car came to rest in the east lane of the highway headed north and partly off the pavement some 45 feet north of the side road. Moore's car came to a stop chiefly in the center lane of the highway headed east and extending into the east lane some 20 feet north of the side road. The cars were then 25 to 30 feet apart.
Appellant Moore contends that the court erred in overruling his motion for a directed verdict, which raised the issue of plaintiff's contributory negligence. The motion for a directed verdict was not mentioned in Moore's motion for a new *556 trial, but appellant Moore did complain of plaintiff's instructions submitting the case to the jury. Moore's theory is, as stated, that Brown's own testimony shows contributory negligence as a matter of law; that Brown had an unobstructed view of Moore's car before Brown turned out directly into its path; that Brown's so turning was the proximate cause of the collision; that Brown must be held to have seen what he could have seen had he been looking; that he was charged with the duty to look and to see; and that the failure to see what could have been seen by proper observation in the exercise of the highest degree of care bars recovery. Appellant Moore insists that "plaintiff himself admitted contributory negligence directly or by necessary and inescapable conclusion." Appellant cites Secs. 304.010 and 304.020 RSMo 1949, V.A.M.S., and numerous cases. The sections and the cases cited are not decisive of the issue presented under the facts shown. None of the cases cited involve a consideration of the issue of contributory negligence under similar facts.
On the issue of plaintiff's contributory negligence respondent Locke adopts the argument of appellant Moore and further contends that the yellow lines mentioned in evidence are "simply placed for the guidance of highway users"; and that they have no legal status to relieve a motorist from his duty to keep a careful lookout before undertaking to pass. These yellow lines, which were known to the parties familiar with the highway, were a part of the facts and circumstances for the consideration of the jury on the issues of negligence and contributory negligence. The same facts are for our consideration on the issue of contributory negligence as a matter of law.
We think the issue of contributory negligence was for the jury. On plaintiff's evidence an inference could be drawn that Moore's car was not in the center lane, nor had it started to enter that lane when Brown started to pull into the center lane, since, when Brown was partly in the center lane, he saw Moore's car coming out of the east lane. Brown further said it was coming in a slanting direction toward the Brown car. There was no evidence that Moore's car was in the center lane prior to that time. Brown was not conclusively bound to anticipate that Moore would begin to cross over the yellow line and enter into the center lane at the same time Brown started to pull into the center lane to pass the Binns' car. Nor was Brown conclusively bound to anticipate that Moore might suddenly and negligently fail to operate his automobile as near to his right-hand side of the highway as practicable. Whether Brown was negligent in not anticipating such a contingency was for the jury. Wheeler v. Breeding, Mo.App., 109 S.W.2d 1237, 1242(6, 12); Heryford v. Spitcaufsky, Mo.App., 200 S. W. 123, 125(2); Kueckelhan v. Denver-Chicago Trucking Co., Mo.App., 237 S.W. 2d 926, 928; Albert J. Hoppe, Inc. v. St. Louis Public Serv. Co., Mo.Sup., 235 S. W.2d 347, 348(1), Id. Mo.App., 227 S.W. 2d 499, 502(7); 38 Am.Jur. 871, Negligence, Sec. 192.
Considered favorably to Brown, we think the evidence shows that it was Moore's act that created the emergency and whether Brown exercised the highest degree of care in turning to the left under the circumstances shown was a jury question. Clark v. Atchison & Eastern Bridge Co., 324 Mo. 544, 24 S.W.2d 143, 152(11, 12); 38 Am.Jur. 874, Negligence, Secs. 194, 195; King v. Friederich, Mo.App., 43 S.W.2d 840, 841(1); Yontz v. Shernaman, Mo.App., 94 S.W.2d 917.
Respondent Locke further contends that, regardless of whether the trial court correctly ruled the issue of plaintiff's contributory negligence, the motion to set aside the verdict and judgment and enter judgment for defendant Locke was properly ruled, since the record affirmatively shows (1) that defendant Moore was not acting within the scope of his employment at the time of the collision, and (2) that such point was raised in respondent's motion to set the verdict and judgment aside. If the trial court correctly ruled the motion to enter judgment for defendant Locke, it is immaterial that the court may have assigned an erroneous or improper *557 reason therefor. Missouri Electric Power Co. v. City of Mountain Grove, 352 Mo. 262, 176 S.W.2d 612, 616(10); Holland Banking Co. v. Republic Nat. Bank, 328 Mo. 577, 41 S.W.2d 815, 820.
It was admitted that the automobile operated by Moore was owned by Locke and that Moore was "in the general employ of Locke, Inc. as a salesman," but it was denied that Moore was acting within the scope of his employment at the time the collision occurred. The only evidence presented on the last issue was Moore's testimony. His testimony on that issue was not questioned in any manner. Moore lived in Hickman Mills. On the day in question he wrote a letter to his employer. When he left home late in the afternoon, he took the letter with him intending to mail it in Kansas City. He first purchased some stamps in Hickman Mills and then drove south on U. S. Highway 71 to Grandview, Missouri, to purchase a case of beer for a private party that evening. While the car was owned by Locke, Moore was permitted to retain the car in his possession and use it for his own private purposes on payment of a fee and reimbursement of gasoline on a mileage basis. After getting the beer, Moore started back north toward Hickman Mills still having the letter with him. He was going to Kansas City for the purpose of mailing the letter, and he expected to take the beer to Kansas City and return to Hickman Mills. He said that mailing the letter was company business. The business was in relation to an order. The trip to Grandview was on personal business, it had nothing to do with company business. Except for his private business, that is, the personal errand to buy the case of beer, he would have turned north on U. S. Highway 71 to go to the Kansas City Post Office. As it was, he turned south on U. S. Highway 71 and went three miles south to Grandview and he had started back north on the same highway toward Hickman Mills and Kansas City when the collision happened one-fourth mile north of Grandview. Plaintiff's evidence showed the presence of the case of beer in the car after the collision.
Appellant Brown has not replied to respondent Locke's contention that Moore was not acting within the scope of his employment when the collision occurred.
We have held that "substantial controverting evidence" is sufficient "to dispel the presumption of agential authority under the doctrine of respondeat superior, arising from proof of defendant's ownership of the vehicle and general employment of the tort feasor in charge"; and that "if there is no evidence for plaintiff except the bare minimum required to support the presumption, then if the presumption be destroyed, that underlying evidence alone will not be enough to raise an inference to the same effect and make a prima facie case for the jury." State ex rel. Waters v. Hostetter, 344 Mo. 443, 126 S.W.2d 1164, 1166; Klotsch v. P. F. Collier & Son, Corp., 349 Mo. 40, 159 S.W.2d 589, 593; Berry v. Emery, Bird, Thayer Dry Goods Co., 357 Mo. 808, 211 S.W.2d 35, 42(8).
"If the deviation of an employee from his authorized course be only slight or incidental, the employer may still be liable * * *. If the materiality of the deviation be a question on which reasonable minds may differ, it is a matter for the jury to decide. But if the departure from the employer's business be of a marked and decided character and the evidence is not conflicting, it is a question of law for the court * * *." Klotsch v. P. F. Collier & Son, Corp., supra, 159 S. W.2d 589, 593.
We think that Moore had materially deviated from his master's business by turning south for a six mile round-trip on U. S. Highway 71 on private business. From Hickman Mills to Grandview and back to Hickman Mills was in effect an independent trip. Moore had not yet returned to the point of deviation when the collision occurred. Although he had the letter in his possession and intended to go on to Kansas City to mail it, he was not upon the master's business when he set forth upon the independent trip to Grandview and return. He was not on a merely circuitous journey to mail the letter. He *558 intended the disposition of private business in the opposite direction and to return to Hickman Mills, before proceeding from Hickman Mills to Kansas City to mail the letter. The deviation was definite and certain, out and back to the starting point. As a matter of law Moore was not within the scope of his employment when the collision occurred. Humphrey v. Hogan, Mo.App., 104 S.W.2d 767, 769; Ursch v. Heier, 210 Mo.App. 129, 241 S.W. 439; Anderson v. Nagel, 214 Mo.App. 134, 259 S.W. 858, 861(1). The court did not err in entering judgment for respondent Locke.
Appellant Brown contends that the $500 verdict returned in his favor is grossly and shockingly inadequate; and that the court erred in overruling his motion for a new trial on the issue of damages alone. In the trial court and in this, appellant Brown asks "a new trial on the question of damages alone." Appellant Moore's only reply to Brown's contention that the verdict is grossly and shockingly inadequate is that "the measure or amount of plaintiff's damages is not material as his own contributory negligence, as a matter of law, removes the presence of any legal injury to him." Respondent Locke, however, contends that the damages awarded were not grossly inadequate under the evidence presented; that in any event, since no general motion for a new trial was filed, the matter of granting a new trial on the issue of damages was wholly discretionary; and that the trial court was not required to exercise such discretion and award plaintiff a new trial on the issue of damages alone. In view of the conclusions we have reached, supra, respondent Locke is not concerned with this issue.
On the issue of damages, plaintiff testified that he had had the 1942 Pontiac Sedan eighteen months; that he paid $1,750 for it; that it had previously been driven 40,000 miles and he drove it approximately 60,000 additional miles before it was wrecked; that it was worth $1,250 before the collision and had "practically all new tires"; and that its value after the collision was $25. Six photographs of the wrecked automobile were in evidence and show a badly wrecked automobile.
Plaintiff received severe personal injuries, towit, a multiple fissure type fracture of the right hip socket, a posterior dislocation of the head of the femur and extensive scalp lacerations in the frontal region of the skull and over the bridge of the nose. His physician testified that these scalp wounds had entirely healed, leaving a moderate amount of scar on his forehead. With reference to the right hip, which was his major injury, he still had lameness, and he still had some pain radiating over the sciatic nerve distribution. There was very little atrophy of the leg muscles, however. He had practically normal range of mobility for flexion; there was "probably fifteen or twenty per cent loss of abduction of his hip." Fragments of bone broken around the edge of the hip socket will cause traumatic arthritis, which will be permanent. The amount of arthritis may increase over a period of several months or years, and it could be that it would cause less mobility at a later date than he has now. He will continue to have pain in the hip as the result of his injury.
On receipt of his injuries, plaintiff was promptly taken to St. Joseph's Hospital in Kansas City and then to the Trinity Lutheran Hospital where he remained for ten days. He was then taken to his home where he was in bed for four weeks. For some four months he was on crutches. He was hurt on March 12, 1949, and was not able to resume his work as a bulldozer operator until the latter part of 1950. He said that bulldozer operators got $2.30 per hour, but that he was a member of a kind of partnership with his wife and sons in the excavating business and he operated one of the bulldozers. He could work from sunup to sundown before his injury, but he has had much difficulty since, as his right hip tires easily and is stiff and pains. He has to get down off a bulldozer after two or three hours work. He said he had lost approximately fifty per cent of his net income, or "possibly $400.00 a month," for the two years following his injury. He had paid doctor and medical *559 bills in the sum of $490 to the time of the trial.
Defendants offered no contravening evidence on the issue of plaintiff's personal injuries or property damages and, as stated, appellant Moore has not briefed the issue of an inadequate verdict. Respondent Locke only argues the credibility, weight and value of plaintiff's testimony. The verdict for plaintiff on the issue of liability clearly rests upon the credibility, weight and value of plaintiff's personal testimony. On the issue of liability the jury believed the plaintiff, and the court refused to set the verdict aside on the assignments in the motions for a new trial filed by both defendants that the verdict was against the greater weight of the evidence.
The trial court, in overruling plaintiff's motion for a new trial on the ground of a shockingly inadequate verdict and in overruling the defendants' motions for a new trial on the ground that the verdict for plaintiff was against the greater weight of of evidence and was the result of passion and prejudice, weighed the evidence and determined that a verdict in plaintiff's favor for the sum of $500 was not against the weight of the evidence. Coats v. News Corp., 355 Mo. 778, 785(3), 197 S.W.2d 958, 962(6-8).
As an appellate court, we do not weigh the evidence as the jury and the trial court were authorized to do. We determine only whether the trial court abused its discretion in overruling plaintiff's motion for new trial on the ground that the verdict was grossly and shockingly inadequate. Murphy v. Kroger Grocery & Baking Co., 350 Mo. 1186, 1194(7); 171 S.W.2d 610, 613(8, 9); Roush v. Alkire Truck Lines, Mo. Sup., 245 S.W.2d 8, 10.
In determining, on an appeal, the adequacy or inadequacy of damages awarded by a jury's verdict in a personal injury damage suit, all reasonable presumptions are to be indulged in favor of the verdict and the evidence must be viewed favorably to the verdict. We must keep in mind that the question of the amount of damages is primarily for the jury. The jury's broad discretion in fixing the amount of the award is conclusive on appeal, especially where the verdict has the approval of the trial court, unless the appellate court can say that the verdict is so shockingly and grossly excessive or inadequate as to indicate that the amount of the verdict is due to passion and prejudice; and that the broad discretion granted to the jury and to the trial court in weighing the evidence has been arbitrarily exercised and abused. Wilhelm v. Kansas City Public Serv. Co., 358 Mo. 6, 212 S.W.2d 915, 918; Hemminghaus v. Ferguson, 358 Mo. 476, 215 S.W.2d 481, 485; Cruce v. Gulf, Mobile & Ohio R. Co., 361 Mo. 1138, 238 S. W.2d 674, 681; Conner v. Neiswender, 360 Mo. 1074, 232 S.W.2d 469, 470. If the verdict is in fact so grossly and shockingly inadequate as to indicate that it resulted from passion and prejudice it should be set aside. Grodsky v. Consolidated Bag Co., 324 Mo. 1067, 26 S.W.2d 618, 623; English v. Thrower, Mo.App., 146 S.W. 2d 667. Each case must be ruled upon its own peculiar facts. Coghlan v. Trumbo, Mo.Sup., 179 S.W.2d 705; Hemminghaus v. Ferguson, supra.
In view of the uncontradicted evidence in this record concerning plaintiff's personal injuries, property damages, necessary medical and hospital expenses and financial losses directly resulting from the collision, we think it is apparent that the $500 verdict in plaintiff's favor was so grossly and shockingly inadequate as to show passion and prejudice. We are further drawn to this conclusion by the fact that the jury necessarily had to and did approve the credibility, weight and value of plaintiff's own testimony on the issue of liability when they returned a verdict in his favor in any amount. Further, in overruling the motions of both defendants for a new trial, the trial court weighed plaintiff's personal testimony on the issue of liability and refused to set aside the verdict in plaintiff's favor. It is true that plaintiff asked a new trial on the issue of damages alone, but it appears that he had cause to complain only because of the inadequacy of the verdict. He did file a motion for a new trial and assigned therein only the ground upon which he had a right *560 to complain. All three motions for a new trial were pending before the court on the day the motion was ruled and the court was fully authorized to grant plaintiff a new trial on all issues, or to limit the new trial to particular issues.
In refusing to limit the issues on a new trial to the issue of damages alone, the trial court was acting within its sound discretion. The record shows much conflicting evidence on the issue of liability. The testimony of Binns and Moore tended to show that Moore was driving north on the east side of the highway; and that Brown, who was driving his car south on the west side of the highway, came up rapidly behind the Binns' car and, when within 6 to 12 feet behind it, he swerved to the left to avoid striking Binns' car, and hit ice and snow on the pavement and went directly across the pavement to the east side of the highway and collided with the Moore car, as the Moore car, was meeting and passing Binns' car. Binns and Moore were driving at 25 to 30 miles an hour, while Moore fixed the speed of Brown's car at 50 to 60 miles an hour. The highway was "severely slick" and a heavy wet snow was falling. The temperature was a few degrees below freezing. In view of the conflicting evidence on the issue of liability, no abuse of the court's discretion is shown in denying a new trial on the issue of damages alone. Section 510.330 RSMo 1949 V.A.M.S., provides that a new trial may be granted on all or part of the issues after trial by jury. The cases are reviewed in Lilly v. Boswell, Mo.Sup., 242 S.W.2d 73, 78.
While the court did not abuse its discretion in refusing to limit a new trial to the issue of damages alone, we think it is clear that the court did abuse its discretion in refusing a new trial to plaintiff-appellant on all issues on his cause of action because of the grossly and shockingly inadequate verdict.
Appellant Moore has made additional assignments of error, but such assignments, in so far as they need now be ruled, are without merit. The verdicts on the counterclaims should be held in abeyance awaiting final disposition of plaintiff's cause of action.
The judgment is reversed, the $500 verdict is set aside and the case remanded to the trial court for a new trial of plaintiff's cause of action.
All concur.