**KANSAS CITY DIESEL POWER COMPANY, INC., Respondent,**

v.

**KIRLOSKAR, INC., Appellant.**

No. WD 32904.

Missouri Court of Appeals, Western District.

Jan. 11, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied March 1, 1983.

James L. Burgess and Berry F. Laws, Kansas City, for appellant.

Dennis L. Davis and Frank J. Murphy, Kansas City, for respondent.

Before MANFORD, P.J., and WASSER-STROM and KENNEDY, JJ.

KENNEDY, Judge.

K.C. Diesel Power Company in 1978 entered into a distributorship agreement with Kirloskar, Inc., whereby K.C. Diesel agreed to become a distributor of Kirloskar diesel motors in Missouri and Kansas. By the terms of the contract K.C. Diesel was to maintain an inventory of Kirloskar diesel engines and parts. At K.C. Diesel's request, a termination provision was added to the distributorship contract tendered by Kirloskar. This provided for termination by either party on 120 days' notice, and obliged Kirloskar in the event of termination to repurchase new, unused and undamaged engines and spare parts purchased from Kirloskar during the 12 months before the date of termination.

At approximately the same time as the distributorship agreement, the parties entered into a separate consignment arrangement. Under this arrangement—which was not in writing—Kirloskar would ship engines to K.C. Diesel on consignment. They were kept in K.C. Diesel's warehouse. When K.C. Diesel itself sold a consigned engine, it would buy it from Kirloskar and re-sell it to its customer. Or at Kirloskar's direction, K.C. Diesel would load a consigned engine on a common carrier for shipment to any place designated by Kirloskar. Consigned engines remained the property of Kirloskar.

After a year K.C. Diesel elected to terminate the distributorship agreement and so notified Kirloskar by letter dated April 16, 1979. The effective termination date was August 14, 1979. Apparently both parties understood that the termination of the distributorship agreement also brought the consignment arrangement to an end, and the parties intended to sever the entire relationship.

At the time of termination, K.C. Diesel had on hand 11 consigned engines, and also had in inventory a number of purchased engines and parts.

A dispute arose between the parties as to the engines and parts which Kirloskar was obligated to repurchase from K.C. Diesel. K.C. Diesel submitted a list of engines and parts which it claimed were qualified for repurchase under the termination agreement. The total of these, along with certain other debits, totaled $43,646.14. It advised Kirloskar by letter dated August 10 that "[a]ll units will be shipped in a consolidated shipment immediately when settlement received."

On August 16, Kirloskar submitted to K.C. Diesel its own settlement figure of $21,291.81.

On August 30 a letter from K.C. Diesel to Kirloskar referring to "our conversations [of] the past few days" reduced its claim to $28,726.83. On August 29 Kirloskar agreed additionally to repurchase all the new engines purchased from Kirloskar by K.C. Diesel, including four over-one-year engines which Kirloskar had earlier declined to repurchase.

At this point, the parties were apparently in agreement as to the parts and engines to be repurchased by Kirloskar, and perhaps the amount Kirloskar was to pay. K.C. Diesel, however, now declined to ship the merchandise until it had first received payment. Kirloskar then on September 28 advised K.C. Diesel that it would make payment when it had received the merchandise. The September 28 letter from Kirloskar to K.C. Diesel demanded the return of: "All Product eligible for return under termination clause of the Distributor Agreement

are to be returned, freight collect, to Kirloskar, Inc. 1401 Cherry Hill Rd., Balto., MD 21225, as previously requested." Both parties, at least upon trial of the case and here, treat this as a withdrawal of Kirloskar's earlier (August 29) offer to repurchase the four over-one-year engines.

On October 8, K.C. Diesel wrote to Kirloskar, saying:

> K.C. Diesel will ship all units back to United Rigging and Hauling, Inc. 6701 Ammendale Road, Beltsville, MD, consigned to ourselves. I will inform you of shipping time and expected availability for inspection. I will accompany your representative to check out the units. At the time units are inspected, and certified or cashier's check in the amount of $28,-726.83 (reference my letter of 8/30/79) for product, plus transportation in the estimated amount of $1,500.00 is received, units will be released to you.

Kirloskar turned down this proposition.

Throughout the correspondence, Kirloskar made repeated demands that the consigned engines be returned to them "freight collect".

In early November K.C. Diesel, without explanation for its change of position, shipped its entire Kirloskar inventory (not including the consigned engines) to Kirloskar. Kirloskar sent K.C. Diesel a letter dated November 14, 1979, acknowledging the receipt of the merchandise. There were 12 engines in the shipment. Kirloskar gave K.C. Diesel credit for four of the engines. It denied credit for four used engines, and four "over-one-year engines". Only the "over-one-year" engines are involved in the case before us.

By the same letter, Kirloskar debited K.C. Diesel for the "list amount" of the consigned engines remaining in K.C. Diesel's possession. There were 11 of them, and the total was $29,940. After giving K.C. Diesel credit for $11,139.32 for the returned inventory and various other credits, and after certain adjustments in their earlier accounts, Kirloskar claimed a total due from K.C. Diesel of $21,583.64. At this point, the situation was as follows:

1. K.C. Diesel had in its possession in Kansas City 11 consigned diesel engines belonging to Kirloskar.
2. Kirloskar had in its possession in Baltimore (insofar as our case is concerned) four over-one-year diesel engines which K.C. Diesel had shipped to it for repurchase, but which Kirloskar had refused to repurchase.
3. Kirloskar owed K.C. Diesel for repurchased inventory, with certain adjustments to their mutual accounts, the sum of $15,398.62. This was the amount fixed by the judgment upon trial, although it apparently remained in dispute until trial. The amount is not in controversy on this appeal.

1. *Conversion by Kirloskar of four "over-one-year" engines.*

Two weeks later plaintiff K.C. Diesel filed suit against Kirloskar for the amount alleged to be owing to it for repurchased inventory and other charges (no longer in issue in the case), and for damages for conversion of the four over-one-year engines. Defendant Kirloskar's attorney, in his opening statement, admitted that Kirloskar had sold three of the over-one-year engines. The trial court on the basis of that admission, directed a verdict for K.C. Diesel for Kirloskar's conversion of the three engines for the prices at which Kirloskar had sold them, a total of $7,004.98.

The case proceeded to trial for the conversion of the fourth engine, which remained in Kirloskar's possession.

The jury verdict in the claim for damages for conversion of the engine was in favor of K.C. Diesel and against Kirloskar for actual damages of $3,700 and for punitive damages of $25,000.

From this verdict and judgment Kirloskar takes an appeal, claiming that K.C. Diesel did not make out a submissible case for the conversion by Kirloskar of the fourth over-one-year engine. In this argument defendant Kirloskar must be sustained. The engine was shipped by K.C. Diesel to Kirloskar in Baltimore. Kirloskar had not invited it to do so, and K.C. Diesel

makes no claim here that Kirloskar had requested the shipment of the over-one-year engines and makes no claim here that Kirloskar was obliged to repurchase the engines. Both K.C. Diesel and Kirloskar proceed in the conversion claim on the premise that the over-one-year engines remained the property of K.C. Diesel.

As to three of those engines, Kirloskar's attorney in the opening statement acknowledged that they had been "updated and sold" by Kirloskar. K.C. Diesel says that Kirloskar's attorney's opening statement also makes a submissible case on the conversion of the fourth engine. Here is what Kirloskar's attorney said:

> Again, those four engines over one year old were shipped to us anyway, again, unannounced. One of those engines is now sitting in our warehouse. Three others, three of the four, were updated. I should say to be more accurate, all four of them when they came in the fall of 1979 were updated. One of them remains in Kirloskar's possession. Three of them then were updated and sold during the next three or four month period of time after they came in.

K.C. Diesel says that the "updating" of the fourth engine, admitted in the statement, constitutes an admission sufficient to carry their conversion claim to the jury. There was no other evidence that (in the language of the verdict-directing instruction) "defendant Kirloskar on or after November 14, 1979 used the [fourth engine] in a way that indicated a claim of right in opposition to plaintiff K C Diesel." The only direct evidence on the point came from Kirloskar, whose sales representative, Mr. Reid, said that the fourth engine at trial time was still in the crate in which Kirloskar had received it, in the same condition as when received, had never been placed in Kirloskar's inventory, and was segregated in Kirloskar's warehouse as belonging to K.C. Diesel. Reid said that K.C. Diesel had never asked for a return of the engine, and denied that Kirloskar asserted any claim to it. There is no claim on K.C. Diesel's part

that it ever demanded a return of the engine, or gave any instructions as to its disposition. Where original possession of goods was gained rightfully, as was the case here, simple retention of the property does not constitute a conversion unless there is a demand for its return. *Handlan-Buck Mfg. Co. v. Stave Electrical Co.,* 184 Mo.App. 247, 168 S.W. 785, 793 (1914).

■ We do not agree that Kirloskar's attorney's opening statement that the fourth engine had been "updated" constitutes such evidence as to carry K.C. Diesel's conversion claim to the jury. K.C. Diesel, citing *Goodman v. Firmin Desloge Hospital,* 540 S.W.2d 907 (Mo.App.1976), and *DeArmon v. City of St. Louis,* 525 S.W.2d 795 (Mo.App.1975), says that an admission in an opening statement is a judicial admission and is conclusive, unlike an evidentiary admission which may simply be considered along with other evidence. We think, however, that the statement made by Kirloskar's attorney was "a mere statement or outline of anticipated proof upon any one or more of the issues in the case." *Evans v. Sears, Roebuck & Co.,* 129 S.W.2d 53, 57 (Mo.App.1939). In such a case, the statement "is not to be regarded as a binding admission so as either to conclude the party whose counsel made the statement or to dispense with the necessity of proof upon the issue on the part of his adversary." *Bayer v. American Mutual Casualty Co.,* 359 S.W.2d 748, 753 (Mo.1962). K.C. Diesel obviously did not treat counsel's statement about the updating of the fourth engine as a judicial admission, which, as we have before noted, would have been conclusive upon Kirloskar and which would have relieved K.C. Diesel of the necessity of proving the fact admitted. Had it viewed the statement as such an admission, it could have requested a directed verdict on the fourth, the unsold, engine, as it did on the other three engines.

We hold therefore that no submissible case for conversion was made with respect to the fourth engine. The judgment for damages for conversion is reversed.

Having made no submissible case for conversion, of course the punitive damages verdict and judgment cannot stand. *Adelstein v. Jefferson Bank and Trust Co.,* 377 S.W.2d 247, 252 (Mo.1964); *United Telephone Co. of Missouri v. Horn,* 610 S.W.2d 701, 706 (Mo.App.1980).

2. *Replevin of 11 consigned engines.*

We turn now to the 11 consigned engines. After K.C. Diesel had filed its conversion claim against Kirloskar, Kirloskar counterclaimed for replevin of the 11 consigned engines which remained in K.C. Diesel's possession. There is no dispute that the engines did remain in K.C. Diesel's possession, and there is no dispute that they were the property of Kirloskar. K.C. Diesel makes no claim to their ownership or to the right to their possession.

The jury's verdict awarded the engines to Kirloskar. The verdict found the value of the property to be "none" and assessed Kirloskar's damages for their taking and detention at "none".

Both parties appeal from the ensuing judgment. K.C. Diesel claims that Kirloskar made no submissible case for the replevin of the engines, and that the verdict and judgment which award them to Kirloskar are unsupported.

Kirloskar, on the other hand, complains of the verdict's finding of a value of "none" for the engines, and also of the failure to assess any damages.

2a. *Filing of affidavit for attachment of chattels, without actual seizure, as defense against replevin.*

We will first take up K.C. Diesel's criticism of the verdict. As noted before, there is no argument that the engines were in K.C. Diesel's possession, and no dispute that they were the property of Kirloskar. K.C. Diesel, however, says that when Kirloskar filed its counterclaim for replevin on March 17, 1981, Kirloskar did not have a right to immediate possession of the engines, a necessary element in a replevin case. *Monarch Loan Co. v. Anderson Transmission Service,* 361 S.W.2d 328, 331 (Mo.App.1962). The reason it did not have a right to immediate

possession thereof, K.C. Diesel says, was that K.C. Diesel had attached the engines on February 20, 1980. K.C. Diesel says in its brief: "Because K C Diesel had a valid, undisputed Writ of Attachment on February 20, 1980, it had a right to hold the property and no subsequent claim for replevin could lie."

The attachment papers, which were marked as K.C. Diesel's Exhibit 2 and introduced in evidence, consisted of an affidavit that K.C. Diesel had a claim against Kirloskar for $24,898.33; alleged the non-residence of defendant Kirloskar; and, as a second ground, alleged that Kirloskar had failed to pay for merchandise it was supposed to pay for upon delivery. See § 521.010(13), RSMo 1978. The affidavit was signed and sworn to by Kenneth W. Mast, who was president of K.C. Diesel. The second page of Exhibit No. 2 is a list of the 11 consigned engines. The third page is a copy of a "writ of attachment" directed to the sheriff or any deputy sheriff of Clay County, directing him to attach "the lands, tenements, goods, chattels, rights, moneys, credits, evidences of debt and effects of defendant Kirloskar, Inc.," and to "summon as garnishees all persons in whose hands or possession any personal property . . . of said defendant may be, or who may be named by the plaintiff or his attorney as garnishees. . . ." The writ is signed by the deputy circuit clerk of Clay County. It contains a list of the 11 consigned engines. The third page of Exhibit 2 is an incomplete, untitled form which might have been intended as a summons to garnishee. After the caption, the form, directed to no one, says only "to appear before said court on the 21st day of March, 1980, to answer such interrogatories as may be exhibited by the plaintiff, attorney for plaintiff, to wit: Dennis L. Davis, Hillix, Brewer, Hoffhaus & Whittaker, 2715 Commerce Tower, P.O. Box 13367, Kansas City, Missouri 64199." It is dated February 20, 1980, and signed by a Clay County deputy circuit clerk. The fourth and fifth pages are an attachment bond in the sum of $24,898.33.

■ That was the end of the so-called "attachment". There was no execution of the writ by the seizure of the goods or by summoning the person in whose hands they were. There was no notice of attachment given to defendant Kirloskar, as required by Supreme Court Rule 85.07. Kirloskar first learned of the "attachment" at the time of the trial. The above-described attachment papers lay in court inchoate and unexecuted after their filing. They furnish no shield against Kirloskar's replevin action. Only the "seizure under legal process" is a defense to a replevin claim. Supreme Court Rule 99.03. See *State ex rel. Mather v. Carnes,* 551 S.W.2d 272, 282 (Mo.App.1977); *Stephens v. Curtner,* 205 Mo.App. 255, 222 S.W. 497, 498 (1920).

2b. *Submissibility of replevin case. Failure to deliver as constituting wrongful detention.*

Kansas City Diesel next says that Kirloskar made out no submissible case for replevin because the evidence does not show Kansas City Diesel's wrongful detention of the consigned engines. See *Fawley v. Bailey,* 512 S.W.2d 477, 479 (Mo.App.1974); § 533.010(2), RSMo 1978. There is, however, plenty of evidence of wrongful detention to support the jury's verdict in the replevin case. There was first the failure of K.C. Diesel to ship the engines to Kirloskar's Baltimore location "freight collect" as repeatedly requested by Kirloskar. There was evidence from which the jury could believe that it was K.C. Diesel's obligation under the oral consignment agreement to place the consigned engines on a common carrier for delivery to any destination designated by Kirloskar. In pursuance of that arrangement engines had been shipped from K.C. Diesel to Iowa, to Canada, and "different places". The engines were already crated and K.C. Diesel would only prepare a bill of lading and load the engines on a common carrier.

K.C. Diesel says that it never "refused" to return the engines and parts. Its failure to comply with Kirloskar's request for their return constitutes a refusal, even though K.C. Diesel never refused in specific terms.

K.C. Diesel points to testimony of its general sales manager, Mr. Laird, who testified that he had made a standing offer to Kirloskar's sales representative, Mr. Reid, "that if Kirloskar wanted their engines, they could come to Kansas City, inspect them and pick them up." Under the arrangement K.C. Diesel had with Kirloskar, however, it was K.C. Diesel's obligation to ship the engines to the destination designated by Kirloskar, in this case Kirloskar's Baltimore address. Its refusal to do so constitutes a "wrongful detention" which makes out a case for replevin of the engines by Kirloskar. *Pulliam v. Burlingame,* 81 Mo. 111, 116–17 (1883); *Handlan-Buck Mfg. Co. v. Stave Electrical Co.,* 168 S.W. at 792; *Trailer Leasing Co. v. Scrappo,* 240 N.E.2d 204, 206 (Ill.App.1968); 8 Am.Jur.2d, *Bailments,* §§ 178, 179 (1980).

Holding that K.C. Diesel's failure to ship the engines upon request constituted a wrongful detention, it is not necessary for us to consider other evidence which would constitute a wrongful detention. For one thing, the jury could believe from the evidence that K.C. Diesel's offer to surrender the engines to Kirloskar in Kansas City, was conditioned upon the payment by Kirloskar to K.C. Diesel of the account balance owing by Kirloskar to K.C. Diesel, and that K.C. Diesel was improperly asserting a kind of "possessory lien" upon the consigned engines. An offer to surrender possession of the engines subject to a condition which K.C. Diesel had no right to impose was tantamount to a refusal to surrender them. *Charles F. Curry and Co. v. Hedrick,* 378 S.W.2d 522, 532 (Mo.1964); *Diehr v. Thompson Chemicals Corp.,* 281 S.W.2d 572, 579 (Mo.App.1955). Furthermore, K.C. Diesel's Mr. Laird's offer to surrender possession of the consigned engines, according to Mr. Laird's own testimony, was good only until February 20, 1980. At that time the abortive "attachment" was filed, and it is implicit in Mr. Laird's testimony that after that date, and including the date of filing the counterclaim for replevin on March 17, 1981, K.C. Diesel considered itself entitled to retain the engines under the attachment.

The evidence of wrongful detention by K.C. Diesel amply supports the jury's verdict in the replevin case.

2c. *Failure of jury to fix value of replevined engines. Power of appellate court to relieve against gross inadequacy of damages.*

We come now to Kirloskar's complaint that the verdict did not fix a value of the consigned engines, as required by § 533.140, RSMo 1978, Supreme Court Rule 99.12. The reason for the rule is that the successful claimant may then choose whether he wants his goods or their value in money.

Kirloskar must be sustained in its position. There is no evidence at all to support the jury's assessment of the value of the 11 new engines as "none". Nobody claimed they were without any value. The only direct evidence on the point was offered by Kirloskar, whose sales manager Reid testified that they were worth $30,574 at trial time. That figure actually was unchallenged. No reasonable person could conclude on the basis of the evidence that the 11 new engines were without any value.

It is a firmly established principle that an appellate court may reverse a judgment for gross inadequacy of damages, demonstrating that such a verdict could have been reached only upon the basis of, passion, prejudice or some species of misconduct on the part of the jury. As Judge Lamm put it in *Fischer v. City of St. Louis,* 189 Mo. 567, 579, 88 S.W. 82, 85 (1905):

> But judges have never renounced their right, as an element in the administration of the law, to set aside a verdict, either excessive in bigness or ridiculous in littleness, where the result reached shocks the understanding and can not (sic) be fairly justified on any hypothesis except misconduct or prejudice or willful disregard of instructions.

See to the same effect *Brown v. Moore,* 248 S.W.2d 553, 559 (Mo.1952); *English v. Thrower,* 146 S.W.2d 667, 668 (Mo.App. 1940). In the former case the court stated the rule as follows:

In determining, on an appeal, the adequacy or inadequacy of damages awarded by a jury's verdict in a personal injury damage suit, all reasonable presumptions are to be indulged in favor of the verdict and the evidence must be viewed favorably to the verdict. We must keep in mind that the question of the amount of damages is primarily for the jury. The jury's broad discretion in fixing the amount of the award is conclusive on appeal, especially where the verdict has the approval of the trial court, unless the appellate court can say that the verdict is so shockingly and grossly excessive or inadequate as to indicate that the amount of the verdict is due to passion and prejudice; and that the broad discretion granted to the jury and to the trial court in weighing the evidence has been arbitrarily exercised and abused. (Citations omitted.) If the verdict is in fact so grossly and shockingly inadequate as to indicate that it resulted from passion and prejudice it should be set aside. (Citations omitted.) Each case must be ruled upon its own peculiar facts.

248 S.W.2d at 559.

While the cases cited above deal with verdicts in damage cases, and not with the assessment of value in replevin cases, we see no difference between the two situations insofar as the principle of appellate relief from a grossly inadequate verdict is concerned. We hold that the principle which has been applied in the damage verdict cases applies equally to the assessment of value in a replevin case.

K.C. Diesel does not argue that Kirloskar, in order to get relief from inadequacy of damages, must show some trial incident or error which could account for the jury's passion, prejudice or misconduct leading to the inadequacy of the verdict. With respect to *excessiveness* of verdict, such a showing is necessary. The rule is thus stated: " 'There must have been [in addition to the excessiveness of the verdict] some incident or occurrence at the trial, or error committed, of such a nature as to engender bias, passion or prejudice.' " *Reynolds v.*

*Arnold,* 443 S.W.2d 793, 801 (Mo.1969), quoting *McConnell v. Pic-Walsh Freight Co.,* 432 S.W.2d 292, 301 (Mo.1968). We have not seen such a requirement where the claim is *inadequacy* of the verdict and we by no means hold that it is required. However, we do find such an incident in the admission of certain testimony of Mr. Laird, sales manager for K.C. Diesel, who was permitted to testify, over Kirloskar's objection, to certain statements made to him by one Mr. Cavitt concerning the experience of another Kirloskar distributor in terminating its distributorship. Mr. Laird testified: "His conversation was that they received a partial payment of the settlement and that they were contemplating taking legal action to get it done and that, likewise, we should be wary, cautious, in the moves that we made and the things that we did." Such testimony was inadmissible on hearsay principles and also on principles of relevancy. *Paige v. Missouri Pacific Railroad Co.,* 323 S.W.2d 753, 756 (Mo.1959); *Castigiola v. Lippicolo,* 229 S.W.2d 266, 269 (Mo.1950). It could have been highly prejudicial to Kirloskar.

K.C. Diesel says the testimony of Cavitt's statements about its dispute with Kirloskar in winding up a distributorship agreement was admissible testimony on the issue of punitive damages which K.C. Diesel was claiming against Kirloskar in its engine conversion claim against Kirloskar. K.C. Diesel cites *Bond v. Wabash Railroad Co.,* 363 S.W.2d 1, 5 (Mo.1962). In that case, which was a malicious prosecution claim against the railroad for the wrongful arrest of the plaintiff for throwing rocks at a railroad car, the railroad sought to introduce reports of earlier incidents of rock throwing at passing trains in which injuries occurred. The court held that the reports were admissible not for the truth of what they said, but to show the fact of the reports and to show the good faith of the railroad employees in arresting the plaintiffs. The case is not authoritative for K.C. Diesel's position. The good faith of K.C. Diesel (corresponding to the position of the railroad in the *Bond* case, as the recipient of the report)

was not an issue in this case at all. It was the bad faith of Kirloskar which was the issue upon which K.C. Diesel offered it.

2d. *Admissibility of evidence of rental value of detained property.*

Kirloskar makes one more complaint. That is of the exclusion of its evidence of the rental value of the diesel engines during the period of their detention by K.C. Diesel. This evidence was offered to prove its damages arising out of the wrongful detention of the engines by K.C. Diesel. Supreme Court Rule 99.12.

The measure of damages in a replevin case is the use value of the property, which may be measured by its rental value. *Johnson v. Linder,* 618 S.W.2d 265, 266 (Mo.App. 1981). Kirloskar's evidence of the rental value of the engines should have been received.

### Conclusion

The judgment for actual and for punitive damages in K.C. Diesel's favor and against Kirloskar on K.C. Diesel's claim for conversion of the one engine is reversed.

The judgment in favor of Kirloskar in its claim for replevin of the 11 consigned engines is affirmed, but reversed insofar as the assessment of the value of the engines and the award of damages. As to those two issues—the value of the engines and the damages for wrongful detention—and as to those two issues only, the cause is remanded to the trial court for a new trial.[1]

All concur.

---

1. In *Brown v. Moore,* 248 S.W.2d at 560, the granting of a new trial on all issues for inadequacy of verdict was upheld as against a contention that the new trial should have been granted on the issue of damages only. It was held that the granting of a new trial on all issues was within the trial court's discretion. The obverse of that proposition is the proposition that the court in its discretion might have granted a new trial on the issue of damages alone.