**J. ESTE McDONALD d/b/a QUIK–PRINT DUPLICATING SERVICES, Plaintiff**

v.

**PETER FRIETZE, Defendant**

Civil No. 419/1987

Territorial Court of the Virgin Islands

Div. of St. Croix

April 21, 1989

Lucia Galiber–Babb, Esq., St. Croix, V.I., *for plaintiff*

IRWIN J. SILVERLIGHT, ESQ. (NICHOLS, NEWMAN & SILVERLIGHT), St. Croix, V.I., *for defendant*

ELTMAN, *Judge*

## MEMORANDUM OPINION

On October 29, 1986, the plaintiff, J. Este McDonald, d/b/a Quik-Print Duplicating Services ("Este McDonald"), leased a printing machine to the defendant, Peter Frietze, d/b/a Caribbean Printing ("Frietze"). The agreement included an option to purchase. Because of a collateral conflict concerning the printing of two issues of the plaintiff's magazine, for which services the plaintiff has refused to pay, this litigation ensued. The plaintiff seeks specific performance, i.e., the return of the duplicator, as well as money damages for the time the machine has been in the defendant's possession. The defendant has counterclaimed for payment for printing services rendered to the plaintiff. For the reasons which follow, the plaintiff will be awarded replevin as well as a portion of the money damages he seeks, and the defendant will prevail on his counterclaim.

## FACTS

According to their agreement, the defendant was to lease the plaintiff's Gestetner offset duplicator at a monthly rental of $300.00 for a term of three years. Frietze also was to purchase at cost price, apparently from Este McDonald, supplies for the duplicator, including ink and paper stock. The lease also gave Frietze the option to buy the machine for $15,000.00, subject to his depositing with the plaintiff $3,000.00, in two installments of $1,500.00 each. Frietze also agreed to "provide printing services on a priority basis" to Este McDonald and to do so at a twenty percent discount. Frietze made the first deposit toward the purchase option, but he did not make the second payment, nor has he paid any of the monthly rent.

Shortly after the contract was signed, Este McDonald, who is the publisher of *The V.I. Times*, delivered material for Volume 8 and then Volume 9 of his magazine to Frietze, who printed both issues and billed the plaintiff $2,156.00 for each issue. The plaintiff has refused to pay the invoice for either issue, on the grounds that the defendant took too long to do the job in both instances and therefore the magazines were received by Este McDonald too late to be of any saleable value. Moreover, Este McDonald contends that both issues were of such poor quality and contained so many errors that

172

he should not have to pay for the printing. He alleges that Frietze was too busy to give him priority attention as required by the contract.

On December 29, 1986, not having received rent for the first two months of the agreement, and contending that Frietze was required to pay the second $1,500.00 deposit toward the purchase option, Este McDonald's counsel, on the letterhead of the plaintiff's company, Jemac Publishing Services, Inc., sent a demand for payment to the defendant. The letter gave Frietze thirty days in which to cure the default, but it also, and inconsistently, declared the lease to be void and demanded that Frietze return the equipment forthwith unless a new agreement was reached. Este McDonald claims that Frietze has refused to return the duplicator and continued to use the machine after the lease was declared void.

On his part, Frietze contends that he is owed payment for his two invoices totalling $4,312.00. According to him, Este McDonald was the sole cause of any delays in publication or any errors in the printing of the magazine, since Este McDonald brought in the material for printing late and incomplete, and continued to make changes up until the final hours before printing. Moreover, the defendant argues that the plaintiff was responsible for proofreading prior to final printing, so that any errors are due to his failure to review his own work. Finally, Frietze alleges that he instructed his employees not to use the machine after receiving the letter of December 29, 1986, that he purchased additional machines, and that the Gestetner duplicator has been resting under wraps in his printing plant, waiting for the plaintiff to come and pick it up. Frietze denies that he has refused to return the machine or that he would have prevented Este McDonald from removing it from Caribbean Printing.

Three issues require decision: a) the plaintiff's claim for damages because of the defendant's alleged refusal to return the duplicator; b) the plaintiff's demand for specific performance, ordering the defendant to return the machine; and c) the defendant's counterclaim for payments for printing services.[1] These issues can more clearly be addressed in reverse order.

---

[1] Este McDonald originally sought consequential damages for the subsequent issues of *The V.I. Times* which he was unable to publish, purportedly on account of the retention of his machine by Frietze. However, since he could not demonstrate that he would have realized any profit on his publication, this claim for damages was withdrawn at closing argument.

## DISCUSSION

### A. *The Counterclaim*

There is no dispute that the defendant printed two issues of *The V.I. Times* for which the plaintiff failed to pay. The plaintiff contends that he should not have to pay Frietze's invoices because the issues were not timely delivered to him and were defective.[2] Neither defense has any merit. Este McDonald claims that he delivered the rough draft of Volume 8 in the latter part of October, 1986, and that it was returned to him on November 17, 1986. According to him, he delivered the rough draft of Volume 9 on November 17 or 18 and picked up the final product on or about December 21, 1986. However, a job ticket was prepared for Volume 8, either when the plaintiff first brought in the rough draft or possibly the next day. It is dated November 15, 1986. Este McDonald has offered no support, documentary or otherwise, for his assertion that he delivered the materials for Volume 8 in the latter part of October, 1986. However, even if he had brought the rough drafts of both volumes to Frietze when he says he did, he has failed to establish any agreement with respect to the date for delivery of either issue.

Moreover, the record compels the conclusion that it was the plaintiff himself who was responsible for any delays in printing. The rough drafts which he brought to Frietze were rough indeed, to the extent of being handwritten in part, a condition which normally would have resulted in substantially higher prices and increased production time. Este McDonald continually supplemented and revised material. Frietze did not have a proofreader, a fact which was known to Este McDonald, who acknowledges that he was at least in part responsible for proofreading. In addition, a portion of *The V.I. Times* was printed in Spanish, and Caribbean Printing, as Este McDonald knew, did not have a Spanish-speaking employee, so that Este McDonald was particularly and solely responsible for proofreading the Spanish language material.

No great expertise in the field of printing is required to understand the basic principle that a printer cannot produce what he does not yet have, and since the record establishes that Este McDonald brought in incomplete materials and kept the printer

---

[2] The plaintiff never filed a reply to the counterclaim but defended against it at trial without objection.

waiting, he cannot fairly expect to avoid payment for editions which were delayed on account of his omissions and tardiness. With respect to the claimed inadequacy of the finished product, the errors cited by the plaintiff seem neither numerous nor particularly serious. Even if they were, they would be attributable to the plaintiff's failure to proofread his material prior to final printing. In summary, therefore, the defendant will prevail on the counterclaim for payment of the two invoices for Volumes 8 and 9 of *The V.I. Times*, totalling $4,312.00.

## B. *The Complaint*

### 1. *Specific Performance*

The plaintiff seeks the return of the duplicator, claiming that the defendant has retained it because of his refusal to pay the printing bills. The defendant, on the other hand, denies that he has deliberately withheld the machine and contends that Este McDonald could have picked it up at any time. While Frietze does not now oppose the return of the duplicator, a resolution of the factual question of whether Frietze has retained it against Este McDonald's wishes is essential to deciding whether Este McDonald is entitled to damages.

Frietze's defense is not credible. Under the circumstances of this case, it is far more likely that, believing he was owed over $4,000.00 for printing *The V.I. Times*, Frietze held the machine as collateral for payment by Este McDonald. Frietze's contention that the machine has been sitting for over two years merely waiting for Este McDonald to come by with a truck and pick it up is not convincing, particularly since the duplicator takes up space in Frietze's plant and he has covered and preserved it during that time. If he were not holding it until he was paid, it is fair to conclude that he would have made some effort to get the machine off his premises.

If common sense were not enough, Frietze's prior statements and those of his former attorney establish that he was less than forthright at trial. Although neither party referred to it at trial, the Court takes notice of Frietze's February 1, 1988, answers to the plaintiff's interrogatories.[3] In his answer to interrogatory 7, the defendant stated, in relevant part:

---

[3] It is well-established that a court may take judicial notice of evidence or matters in its own records or files. See, e.g. ITT Rayonier, Inc. v. United States, 651

I have not been using the press, but rather have made my ow, demand upon plaintiff either to sell me the press with a setof, or to pay me the sums he owes me and remove the press from my premises. See letter attached.

On February 12, 1987, Frietze's former attorney, Bernard C. Pattie, had written to Attorney Galiber-Babb and proposed the following:

Upon the payment by Quick Print to Caribbean Printing in the sum of $5,824.50, Caribbean Printing will release to Quick Print the setoff duplicator which is the subject of the October 29, 1986 contract . . . .

Finally, let me make it absolutely clear that we will not stand for any high pressure tactics on the part of Quick Print, and any effort made by them to harrass my clients or to unlawfully repossess this press will be dealt with in the most serious fashion.

■ It is unclear why Frietze did not take the same position at trial, but he should not be the beneficiary of any right which he specifically avoided asserting at trial. Under the circumstances, therefore, the plaintiff is entitled to the return of the offset duplicator.

■■ Specific performance is an equitable remedy which compels the performance of a contract according to its terms. Monclova v. Arnett, 143 N.E.2d 375 (N.Y. 1957); Potter v. Potter, 251 A.2d 578 (Del. 1968). Moreover, since specific performance functions to enforce the contractual rights and obligations of the parties, the remedy is applicable only when these rights and obligations exist. Lennox v. Texas Farm Bureau Cotton Assoc., 16 S.W.2d 413 (Tex. Civ. App. 1929).

Since Este McDonald rescinded the contract in his December 29, 1986, letter to Frietze, no enforceable contract existed after that date. Thus, even if return of the machine had been a contractual provision, Este McDonald has no right to this performance according to the terms of a voided contract. If the plaintiff's request for specific performance were granted, the court essentially would require the defendant to render performance for which he was not

F.2d 343 (5th Cir. 1981); Gulf City Fisheries, Inc. v. Bobby Kitchens, Inc., 518 So.2d 661 (Miss. 1988); McCurry v. Aetna Casualty and Surety Co., 742 S.W.2d 863 (Tex. 1988).

contractually obligated. Thus, specific performance cannot properly be granted.

■ It would appear that the plaintiff actually seeks replevin instead of what has been styled specific performance. The complaint will be construed accordingly. Fed. R. Civ. P. 8(f); Jenkins v. Fidelity Bank, 365 F. Supp. 1391 (D. Pa. 1973); De Costa v. Columbia Broadcasting System, Inc., 520 F.2d 499 (1st Cir. 1975), cert. denied, 96 S. Ct. 856 (1976).

■■ In order to obtain replevin, the plaintiff must show that, although the defendant may have obtained possession of the property lawfully, the defendant's continued possession is wrongful. Baron v. Peoples Nat. Bank of Secaucus, 87 A.2d 898 (N.J. 1952). Since the evidence establishes that Este McDonald's demand for return of the machine was futile, replevin, as opposed to specific performance, is the appropriate remedy to accomplish the return of the printer. Rochester Gas & Electric Corp. v. Chatterton, 366 N.Y.S.2d 323, 327 (N.Y. 1975).

C. *Damages*

Este McDonald seeks $300.00 per month for all of the time that Frietze has retained the duplicator. Frietze argues that, once the agreement was terminated per the December 29, 1986, letter from the plaintiff to defendant, the plaintiff would not be entitled to any amount of damages thereafter in the absence of a showing of actual loss.

■ Rescission of a contract is essentially the unmaking of the contract and abrogates all rights and responsibilities of the parties from its inception. Metropolitan Property and Liability Insurance Co. v. Commonwealth of Pennsylvania, 509 A.2d 1346 (Pa. Commw. 1986); Dollar Systems, Inc. v. Avcar Leasing System, Inc., 673 F. Supp. 1493, 1503 (D. Cal. 1987). In the present case, the plaintiff's December 29, 1986, rescission of the lease agreement returned the parties to the status which had existed prior to its formation. United States v. Texarkana Trawlers, 661 F. Supp. 25, rev'd, 846 F.2d 297 (Tex. 1988). However, this status quo ante was not entirely effectuated because the defendant retained possession and use of the plaintiff's duplicator without compensating him.

Section 348(1) of the Restatement of Contracts, Second, provides:

> If a breach delays the use of property and the loss in value to the injured party is not proved with reasonable certainty, he

may recover damages based on the rental value of property or on interest on the value of the property.

 In replevin, the prevailing party may recover damages for the wrongful detention of the property. Wilson v. Highway Service Marineland, 418 A.2d 462 (Pa. 1980). Where there is no evidence of the value of the property on the record, the valuation of the property may be assigned as of the time of the trial. In Re Interest of McDonnell, 427 N.W.2d 779 (Neb. 1988). Here, however, the value of the possession and use of the printer is reflected in the monthly rental negotiated by the parties themselves. The rental value of property subject to a replevin action is a valid measure of damages for its wrongful detention. Kansas City Diesel Power Co., Inc. v. Kirlosar, Inc., 647 S.W.2d 841, 849 (Mo. 1983).

 Frietze did not claim a lien on the printer, so that his retention of it was unwarranted. Wilson, supra at 464. Since the reasonable rental value for the machine was negotiated by the parties in an arms-length agreement, the plaintiff may recover the sum of the agreed-upon rent for the total number of months that the defendant wrongfully detained the duplicator. That amount is determined as $300.00 per month, multiplied by 27 months (November, 1986, to the time of the trial, January, 1989), for a total of $8,100.00. Because the defendant is entitled to a credit of $1,500.00 for the initial deposit on the machine, the award to the plaintiff on his complaint is $6,600.00. Since the defendant has prevailed on his counterclaim for $4,312.00, the net award to the plaintiff is $2,288.00.

 Finally, notwithstanding that Este McDonald is the net winner in this litigation, both sides have prevailed on their respective claims. Therefore, the parties will be left to bear their own costs and fees.

## JUDGMENT

In accordance with the memorandum opinion of even date, it is hereby

ORDERED, ADJUDGED AND DECREED that the plaintiff is awarded judgment against the defendant in the amount of $2,288.00.